Elmo Patrick **SONNIER,**
Petitioner-Appellant,

v.

Ross **MAGGIO, Jr., Warden, Louisiana**
**State Penitentiary, et al.,**
**Respondents-Appellees.**

No. 83–4498.

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 15, 1983.
Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1331.

See also, 714 F.2d 20.

Michael Baham, Metairie, La., for petitioner-appellant.

Bernard E. Boudreaux, Jr., Dist. Atty., Dracos D. Burke, Asst. Dist. Atty., New Iberia, La., for respondents-appellees.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

RANDALL, Circuit Judge:

On August 16, 1983, the district court denied the application of petitioner Elmo Sonnier for federal habeas corpus relief, but granted a certificate of probable cause to appeal. On August 17, 1983, we stayed Sonnier's scheduled execution to permit him an opportunity to address the underlying merits of his appeal. Pursuant to an expedited schedule, the parties have briefed the issues, and orally argued the merits on October 24, 1983. For the reasons set forth below, we affirm the denial of the petition for a writ of habeas corpus.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The prosecution against Sonnier arose out of the 1977 murder of two teenagers in Iberia Parish, Louisiana. According to the evidence at trial, Sonnier and his brother abducted the victims from their car under the guise of being police officers. The brothers drove the victims to a remote field, raped one of them, and murdered both. The brothers repeatedly shot their victims in the head from close range. The Louisiana Supreme Court has twice discussed the particulars of the crime at length. *See State v. Sonnier*, 402 So.2d 650 (La.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); *State v. Sonnier*, 379 So.2d 1336 (La.1979).

An Iberia Parish jury initially found Sonnier guilty of first degree murder and condemned him to death in April of 1978. Although the Louisiana Supreme Court affirmed Sonnier's conviction, it vacated the death sentence and remanded for a second trial on the penalty only. *State v. Sonnier*, 379 So.2d at 1368–72. After a change of

venue, a St. Mary's Parish jury returned a second verdict of death. The Louisiana Supreme Court affirmed the sentence on appeal, and the trial court set the execution for August 19, 1983.

Eight days before his scheduled execution, Sonnier filed the present habeas corpus petition. He raised six issues: (1) the prosecution allegedly excluded jurors with personal or religious scruples against capital punishment; (2) application of Louisiana Code of Criminal Procedure, article 798(2)(b), purportedly violated the constitution by excluding from the jury opponents of capital punishment without also authorizing exclusion of proponents of capital punishment; (3) the trial court did not give instructions adequate to inform the jury of the relative weight it should accord to statutorily-defined aggravating and mitigating circumstances; (4) the death penalty in this case allegedly imposed excessive punishment disproportionate to death sentences in other cases; (5) the conviction resulted from the warrantless search of his automobile in violation of the fourth amendment; and (6) the trial court deprived him of access to a court-appointed psychiatric expert. The state concedes that Sonnier has exhausted his state remedies with respect to these issues.

Three days before Sonnier's scheduled execution, the district court denied the petition and entered judgment dismissing the action. At the same time, the district court denied Sonnier's motion for a stay of execution. When Sonnier filed the present appeal, however, the district court issued a certificate of probable cause and granted Sonnier pauper status on appeal. Sonnier's

motion to this court for a stay of execution ensued.

Issuance of a certificate of probable cause requires that the petitioner make a "substantial showing of the denial of [a] federal right." *Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972). Once the certificate has issued, this court must afford the petitioner an opportunity to address the merits. *Barefoot v. Estelle,* —— U.S. ——, 103 U.S. 3383, 3394, 77 L.Ed.2d 1090 (1983). In order to prevent Sonnier's execution from mooting the issues on appeal, we were obliged to stay the execution. *Sonnier v. Maggio,* 714 F.2d 20, 21 (5th Cir.1983).

## II. THE ISSUES.

### 1. Exclusion of Jurors.

Sonnier's first ground for appeal invokes *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In *Witherspoon,* the Supreme Court limited the states' authority to excuse prospective jurors for cause merely because they expressed conscientious objections to imposing the death penalty. *Id.* at 521–23, 88 S.Ct. at 1776–1778. Sonnier contends not only that the trial court improperly excluded jurors on the basis of their views on capital punishment in violation of *Witherspoon,* but also that the prosecution used peremptory challenges to remove from the panel any juror who expressed the slightest reservation about returning a verdict of death.[1]

Sonnier's petition is noticeably lacking in factual particulars. Although he attacks the composition of the jury that convicted him as well as the jury that sentenced him, he does not challenge the excusal of specific

---

1. Sonnier's first ground for relief is stated as follows:

   The exclusion of jurors with scruples against, or who are opposed to capital punishment produces a prosecution-prone and impartial [sic] jury in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. This exclusionary practice is contrary to the rule established by the United States Supreme Court in *Witherspoon v. Illinois,* [391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)], in that

*Witherspoon* excludes such jurors from the sentencing phase and not from the guilt phase. SUPPORTING FACTS: the record reveals that during voir dire at the trial the prosecution obtained the excusal of prospective jurors for cause because they were opposed to the death penalty, and exercised peremptory challenges against others in the venire who had scruples against the imposition of capital punishment.
Petition, at 4.

jurors. Rather, Sonnier relies upon a conclusory allegation that the selection process produced panels uncommonly willing to condemn him to death. As the district court noted, however, this circuit has recognized that a state may excuse jurors "so unequivocally opposed to the death penalty that they would not follow the law on the subject." *Smith v. Balkcom,* 660 F.2d 573, 578 (5th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). The district court rejected Sonnier's first claim on the authority of *Smith v. Balkcom,* apparently because Sonnier had not alleged that the state court actually dismissed any juror who expressed equivocal opposition. Sonnier now complains that the district court failed to ascertain whether each excused juror sufficiently expressed unalterable opposition to the death penalty.

■ We assume, without deciding, that Sonnier's petition adequately presented an issue of the exclusion of particular jurors,[2] and that the state concedes exhaustion of state remedies with respect to this claim. We have examined the voir dire preceding the penalty phase of Sonnier's trial and, perhaps out of an excess of caution, the voir dire preceding the guilt phase of Sonnier's trial as well. Pretermitting the problem of the appropriate standard of review,[3] we find that the state trial court excused no

2. The language of the petition quoted in note 1, *supra,* by no means clearly alleges that the excusal of any particular juror did not comport with *Witherspoon.* Our reading of the Memorandum Opinion leads us to assume that the district court did not so construe the petition. Memorandum Opinion, at 5–6. The pleading, drafted by counsel for Sonnier, does not merit the liberal reading required for pro se pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972).

3. *See O'Bryan v. Estelle,* 714 F.2d 365, 371–73 (5th Cir.1983) (discussing inconsistent standards concerning the degree of deference a habeas court must accord the decision of the voir dire judge).

4. This court has expressly rejected the proposition that "exclusion of a venireman is impermissible unless he states in response to *all* questions that he absolutely refuses to consider the death penalty." *Williams v. Maggio,* 679

juror as to whom the grant of the motion to excuse for cause violated *Witherspoon.*[4]

■ The state does not run afoul of *Witherspoon* where the excluded juror has unequivocally stated his or her inability to vote for the death sentence without regard to the evidence adduced. *E.g., Bell v. Watkins,* 692 F.2d 999, 1006 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983); *Williams v. Maggio,* 679 F.2d 381, 384 (5th Cir.1982) (en banc), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1339 (1983). Even though the juror may equivocate initially, exclusion comports with our interpretation of *Witherspoon* if the juror ultimately concludes that he or she opposes the death penalty irrevocably. *See id.* at 385–89; *O'Bryan v. Estelle,* 714 F.2d 365, 381 (5th Cir.1983).

### A. The Penalty Jury.

Turning first to the jury that determined the penalty, we note that the state judge excused a total of twelve potential jurors for cause.[5] Of these, three stated that they had already formed an opinion about the merits on the basis of prior knowledge of the case.[6] These excusals obviously did not implicate *Witherspoon.* Each of the remaining nine jurors indicated that he or she could not vote for the death penalty in this case, or that he or she could never vote for the death penalty.

F.2d 381, 386 (5th Cir.1982) (en banc) (emphasis in original), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1339 (1983). We focus instead on the prospective juror's "ultimate conclusion," informed by the entire interrogation. *O'Bryan v. Estelle,* 714 F.2d at 381.

5. Our review of the proceedings was complicated by the absence of specific rulings in the transcript. Instead, the rulings on challenges for cause and the listing of peremptory challenges appears on a roster in State Exh. 1 K, 44–45. We assume that the state moved to excuse each of the jurors removed, and that Sonnier opposed each motion, although the record provides no means of ascertaining the accuracy of this assumption.

6. The jurors were Ann Landry, State Exh. 1, 239, Kenneth Jacob, *id.* at 251–52, and Aline Bodin, State Exh. 1 A, 301–03, 322.

■ We conclude that these jurors made their irrevocable opposition to the death penalty clear. Five of the jurors repeatedly stated that they could never vote for the death penalty regardless of the evidence.[7] Three of the jurors expressed uncertainty at some stage of the questioning, but ultimately stated that, at least in this case, they could not return a verdict of death.[8] The remaining juror stated that he was "neutral" on the issue of capital punishment. Nevertheless, he unequivocally stated that his neutrality would prevent him from participating in deliberations concerning the death penalty, and that no evidence would move him to vote for such a verdict.[9]

## B. The Trial Jury.

■ Even if Sonnier could challenge on *Witherspoon* grounds the selection process for the original jury that convicted him, we do not perceive any shortcoming in that process. First, we note that Sonnier did not oppose any of the state's motions to excuse jurors for cause.[10] Of the jurors excused on the state's motion, only one would have presented any serious issue under *Witherspoon*. Juror Rodrigue originally stated that she "couldn't bring [sic] the death of another human being." State Exh. 1 G, at 1014. Thereafter, she retracted the statement, but went on to state that she might require Sonnier to produce evidence before she could change her opinion about his guilt. *Id.* at 1021. The court excused the juror without objection. *Id.* at 1021–22. We find no *Witherspoon* violation in these circumstances.

## C. Peremptory Challenges.

■ Sonnier also contends that the prosecution accomplished an end prohibited by *Witherspoon* by exercising its peremptory challenges to exclude jurors who expressed any hesitancy about imposing the death penalty. Exercise of peremptory challenges, however, does not implicate *Witherspoon*. *Jordan v. Watkins,* 681 F.2d 1067, 1070 (5th Cir.1982). *See also Adams v. Texas,* 448 U.S. 38, 48, 100 S.Ct. 2521, 2528, 65 L.Ed.2d 581 (1980) (describing peremptory challenges as "grounds for exclusion having

---

**7.** Juror Natalie Johnson indicated that she could not serve on a capital sentencing jury or vote for a sentence of death. State Exh. 1, 77, 137. Voir dire disclosed that juror Thelma Feast would never vote for the death penalty, even if the victim had been her own child. *Id.* at 169. Juror Glynda Lasseigne was also unequivocal. Although she stated that she might react in favor of capital punishment if the victim were someone close to her, she said that she would not take another life once she had had time to reflect. *Id.* at 179–183, 205, 209. Juror Sophie Mallet repeatedly affirmed that she was absolutely against the death penalty and could not return a verdict of death. *Id.* at 236–37, 209, 215, 236–37. Juror Joanne Markerson repeatedly agreed that she could not vote for death, regardless of the circumstances. State Exh. 1 A, 315–16, 209, 215, 315–16.

**8.** Juror Rebecca Banks originally expressed uncertainty, State Exh. 1, 85, and at one point agreed that she could vote for death in the most severe case. *Id.* at 117. Under questioning by the court, however, she stated that she might be able to condemn the murderer of her own children to death, but that she could vote for death in no other case. *Id.* at 138–39.

Juror Cynthia McClue was, at first, unsure whether she could condemn a defendant to die. State Exh. 1, 206. Her ultimate position, however, was that she could not enforce the death penalty, and could definitely not vote for death in any case. *Id.* at 206–07, 214.

Although juror Catherine Ayo stated that she was not absolutely opposed to capital punishment, *Id.* at 175, she acknowledged that she could not vote for the death penalty in that case. *Id.* at 216–17.

**9.** Voir dire examination of juror Charles Kately revealed that his "neutrality" on the death penalty would prevent him from imposing a death sentence on any evidence. State Exh. 1, at 253–56, 279.

**10.** The trial judge noted on the record only five instances in which the state moved to excuse jurors for cause, and the defense did not object. Although the judge referred to the jurors by number only, a numerical roster appears in State Exh. 1 L., 22–24. Four of the jurors challenged by the state expressed unequivocal opposition to imposing the death penalty. State Exh. 1 G, at 817 (juror Mallery); State Exhibit 1 F, 625–26, 668 (juror Bonini); State Exh. 1 H, 1064–65, 1067–69 (juror Alexander); *id.* at 1067–69 (juror Raymond). Excusing the final juror, for reasons discussed in the text, presented no *Witherspoon* problem. The state has not urged the contemporaneous objection rule.

nothing to do with capital punishment"). "The essential nature of the peremptory challenge is that it is exercised without a reason stated, without inquiry and without judicial control." *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965). In *Swain,* even a showing of the systematic exercise of peremptory challenges on racial grounds in a series of cases did not necessarily require the prosecution to justify its reasons for exercising its challenges. *Id.* at 222–24, 85 S.Ct. at 837–838. In this case, where there is not even a showing of systematic exclusion, as in *Swain,* it is clear that we lack a compelling basis to look behind the exercise of peremptory challenges in an attempt to discern the prosecutorial motive. In this case the prosecution bears no burden to explain its reasons.

**2. Louisiana Code of Criminal Procedure, art. 798(2)(b).**

Sonnier's second argument presents a variant of his first. He attacks the provision of the Louisiana Code of Criminal Procedure that authorizes challenges for cause against jurors whose opposition to capital punishment would prevent them from returning an impartial decision on the defendant's guilt. *See* La.Code Crim.Proc.Ann. art. 798(2)(b) (West 1981). Sonnier contends that the failure of article 798(2)(b) similarly to authorize exclusion of proponents of the death penalty violates the sixth, eighth and fourteenth amendments to the United States Constitution in two respects. First, he alleges that the statute operates to produce juries incapable of an impartial determination of guilt or innocence. Second, he asserts that the operation of the statute results in juries that do not represent a fair cross-section of the community. He urges the court to remand for evidentiary hearings on the fairness and representativeness of the juries selected under article 798(2)(b).[11]

This court has rejected the argument that a jury from which the state has excluded opponents of the death penalty in a manner that otherwise comports with *Witherspoon* thereby become unfair or partial. In *Spinkellink v. Wainwright,* we held that a "death qualified" jury does not deprive a defendant of a fair and impartial jury even assuming that defendant showed that such a jury, on the average, would be more likely to favor the prosecution. 578 F.2d 582, 592 (5th Cir.1978), *cert. denied,* 441 U.S. 937, 99 S.Ct. 2064, 60 L.Ed.2d 667 (1979). As we explained in *Smith v. Balkcom:*

All veniremen are potentially biased. The process of voir dire is designed to cull from the venire persons who demonstrate that they cannot be fair to *either* side of the case. Clearly the extremes must be eliminated—i.e. those who, in spite of the evidence, would automatically vote to convict or impose the death penalty or automatically vote to acquit or impose a life sentence. The guarantee of impartiality cannot mean that the state has a right to present its case to the jury *most* likely to return a verdict of guilty, nor can it mean that the defendant has a right to present its case to the jury *least* likely to acquit. But the converse is also true. The guarantee cannot mean that the state must present its case to the jury *least* likely to acquit or impose the death sentence nor that the defense must present its case to the jury *least* likely to find him innocent or vote for life imprisonment.

660 F.2d at 578–79 (emphasis in original).

We have likewise rejected the argument that a jury from which the state has excluded opponents of the death penalty in a

11. The petition reads, in pertinent part:
   Louisiana Code of Criminal Procedure Article 978(2)(b) violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution because it provides that a prospective juror may be challenged on the basis that his attitude on the death penalty will prevent him from making an impartial decision on the defendant's guilt. On the other hand, no similar connection is made between support for the death penalty and a propensity to convict, by the Code. The result is that a defendant is deprived of his right to a fair and impartial jury that is a representative of the community. . . .
   Petition, at 4–5.

manner that otherwise comports with *Witherspoon* deprives defendant of a jury representing a fair cross-section of the community. The sixth amendment principle of a fair cross-section does not enable either the prosecution or the defense to foist upon the other "an unfair juror whose interests, biases or prejudices will determine his or her resolution of the case regardless of the law and regardless of the facts." *Smith v. Balkcom,* 660 F.2d at 583. Securing a fair cross-section does not compel disregard of legitimate grounds for disqualification. *Id.; see Spinkellink v. Wainwright,* 578 F.2d at 597 (state's interest in "evenhanded application of the law" justifies deviation from fair cross-section requirement).

### 3. The Jury Instructions on Aggravating and Mitigating Factors.

Sonnier next challenges the instructions under which the penalty jury considered his death sentence. Although the state trial court properly informed the jury of the existence of statutory aggravating and mitigating circumstances provided under Louisiana law, La.Code Crim.Proc.Ann. arts. 905.3–.5 (West Supp.1983), Sonnier asserts that the instructions were insufficient to ensure that the jury would not impose the death penalty arbitrarily. Specifically, Sonnier posits that the state trial court must, in its instructions, supply criteria for assessing the relative weight that the jury should assign to aggravating and mitigating circumstances.[12]

Sonnier premises this argument on *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). There, in approving a Florida capital punishment statute that explicity required the jury to consider whether aggravating factors outweighed any mitigating factors, the Supreme Court stated that the state had adequately "guided and channeled" the jury with respect to sentencing discretion. *Id.* at 258, 96 S.Ct. at 2969. On the basis of this language, Sonnier urges us to conclude that an explicit instruction on the weight to be accorded aggravating and mitigating circumstances is necessary to avoid unchanneled discretion in capital sentencing.

█ We do not, however, read *Proffitt* as standing for the proposition that the constitution requires a state judge to provide the jury with a formula for balancing aggravating and mitigating circumstances. We have never so held. *See Spivey v. Zant,* 661 F.2d 464, 471 (5th Cir.1981), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Indeed, we have deemed frivolous the argument that a failure to provide "any standard for the jury in weighing the aggravating factors against the mitigating factors" rendered a capital punishment statute unconstitutional. *Gray v. Lucas,* 677 F.2d 1086, 1106 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). Moreover, the Supreme Court has recently emphasized that the constitution does not require states to guide jury consideration of aggravating and mitigating circumstances by developing specific balancing standards. *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 2741–44 & n. 13, 77 L.Ed.2d 235 (1983). Accordingly, we reject Sonnier's contention.

### 4. Proportionality.

Sonnier next argues that his death sentence is excessive and disproportionate to the sentences imposed in other cases. Specifically, he argues that the Louisiana

---

**12.** Sonnier's petition reads:

The death penalty is imposed after a failure to instruct the jury on the weight and effect to be given to mitigating circumstances violates the Eighth and Fourteenth Amendments to the United States Constitution. SUPPORTING FACTS: In the charge to the jury, at the sentencing stage, the trial judge told the jury only that it must consider mitigating circumstances in reaching its recommendation. The jury was given a list of the statuto-

rily-defined mitigating circumstances, and was told it could consider any relevant mitigating circumstances. Beyond being told to consider mitigating circumstances, the jury was not instructed as to the effect or weight to be given to any mitigating circumstances and was given no criteria by which to weigh any mitigating circumstances against any aggravating circumstances.

Petition, at 5.

court's consideration only of those capital cases that arose from the judicial district in which he was convicted provides inadequate proportionality review.[13] Noting that the Supreme Court has granted certiorari in a case involving proportionality review, *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982), *cert. granted*, —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983), Sonnier urges us to stay his execution pending disposition of that case.

We have already considered and rejected the claim that the Louisiana district-wide proportionality review violates any nascent right to proportionality review. *Williams v. Maggio*, 679 F.2d at 395. We think that the review that took place in Sonnier's case:[14]

> provides adequate safeguards against freakish imposition of capital punishment. Just as a venire chosen from a cross-section of the community in which the crime is committed is a safeguard against arbitrary enforcement of verdicts and sentences, so a review of the murder conviction imposed within the venire is sufficient to ensure against arbitrary imposition of the death penalty.

*Id.* Although we stayed the execution in *Williams v. Maggio*, 719 F.2d 729 (5th Cir. 1983), the Supreme Court vacated that stay on November 7, 1983. *Maggio v. Williams*, —— U.S. ——, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983). Accordingly, we discern no basis for continuing Sonnier's stay of execution due to the pendency of *Pulley*.

**5. The Warrantless Search of Sonnier's Car.**

Sonnier also seeks review on the basis that his conviction resulted from the unlawful search of his car. We may not routinely reach such issues. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars relitigation in a federal habeas corpus action of fourth amendment issues unless the petitioner demonstrates that he was deprived of an opportunity fully and fairly to litigate these issues in the state trial court. The sole ground on which Sonnier asserts abridgement of that opportunity to litigate derives from the summary treatment of this issue in his appeal to the Louisiana Supreme Court. *See State v. Sonnier*, 379 So.2d at 1356.

The mere allegation that the state court erred in its determination of a fourth amendment issue does not suffice to circumvent *Stone v. Powell*. In *Swicegood v. Alabama*, 577 F.2d 1322, 1324–25 (5th Cir.1978), for example, we rejected the argument that an error of law, even on a constitutional issue, vitiated the opportunity for full and fair litigation. Our view does not change simply because the Louisiana court disposed of the issue in a terse fashion.[15]

---

**13.** The relevant portion of the petition reads:
> Petitioner's sentence of death is excessive and disproportionate, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. SUPPORTING FACTS: In reviewing petitioner's sentence of death for possible disproportionality, the Louisiana Supreme Court used only capital cases in the Sixteenth Judicial District.... At the same time, there were no other death sentences in other cases from the district with which to compare petitioner's sentence. The proper standard for meaningful proportionality review is one which allows for state-wide review.

Petition, at 5–6.

**14.** Although Sonnier correctly points out that his proportionality review did not encompass other death sentences, because no other death sentences had been imposed in his judicial district, this did not deprive him of proportionality review. In the course of the two appeals of this case, the Louisiana Supreme Court did compare the sentence in Sonnier's case to other capital cases. *See State v. Sonnier*, 379 So.2d at 1362–64 (two first degree murder cases, one resulting in second degree murder conviction, the other resulting in a jury recommendation for life imprisonment); *State v. Sonnier*, 402 So.2d at 660–61 (three additional first degree murder cases, one resulting in a second degree murder conviction, one resulting in a sentence of life, and the third, Eddie Sonnier's, resulting in a death penalty set aside by Louisiana Supreme Court as disproportionate).

**15.** This case would not avoid the bar of *Stone v. Powell* even under the most generous view of the "opportunity for full and fair litigation" standard that any circuit has adopted. The Tenth Circuit has held that *Stone* does not foreclose a habeas corpus challenge to a fourth amendment issue if the state court "wilfully

### 6. Refusal to Appoint a Psychiatric Expert.

Finally, Sonnier asserts that the state trial court deprived him of an opportunity to present either an insanity defense, or adequately to present a defense based on his mental condition, a factor allegedly mitigating the severity of his offense.[16] Although a sanity commission examined him, Sonnier contends that the court's refusal to enlist further experts denied him access to favorable psychiatric evidence because, as an indigent, he could not provide his own expert.[17]

We have acknowledged that the state in certain circumstances must provide psychiatric experts to indigent defendants. *See Davis v. Alabama,* 596 F.2d 1214, 1216 n. 5 (5th Cir.1979); *Pedrero v. Wainwright,* 590 F.2d 1383, 1390–91 & n. 8 (5th Cir.1979); *accord Bush v. McCollum,* 231 F.Supp. 560 (N.D.Tex.), *aff'd,* 344 F.2d 672 (5th Cir. 1965). We have noted, however, that a mere request by the defendant for psychiatric assistance does not, as a matter of constitutional law, require a court to appoint an expert. In the context of an asserted insanity defense we have held that the state court must appoint an expert only if the defendant's sanity at the time of the offense is "seriously in issue," *Pedrero v. Wainwright,* 590 F.2d at 1391, or if "reasonable ground to doubt" sanity exists. *Id.* (quoting *Brinks v. Alabama,* 465 F.2d 446, 449 (5th Cir.1972)). Where, as here, the asserted need for psychiatric evidence relates to the penalty phase of a capital case, we assume that the same standard applies. *But see Westbrook v. Zant,* 704 F.2d 1487, 1497 (11th Cir.1983) (examining state court's determination under an abuse of discretion standard).

Moreover, note the narrow nature of the issue presented by this ground of Sonnier's appeal. This is not a case in which the state court refused to provide psychiatric assistance at all. Before the first trial in this case, the state court did convene a sanity commission, which returned findings unfavorable to Sonnier. Not only did the commission find that Sonnier was competent to stand trial but it also found him sane at the time of the offense. Furthermore, the commission members indicated at the sanity hearing that they did not believe that further evaluation would point to a different conclusion. After the trial court denied motions to appoint a new commission, Sonnier dropped his insanity defense, and Sonnier never submitted evidence of his mental condition at the second penalty trial.

We do not think that the state court deprived Sonnier of an opportunity to present his insanity defense. The sanity commission's report did not place Sonnier's mental capacity at the time of the offense "seriously in issue." The sanity hearing did not create "reasonable grounds to doubt" the initial finding of the commission. Even if the record arguably supported a different

---

refuses to apply the correct and controlling constitutional standards." *Gamble v. Oklahoma,* 583 F.2d 1161, 1165 (10th Cir.1978).

Obviously, this is not such a case. We decline to review the district court's conclusions because we think it clear that *Stone* precludes us from doing so.

**16.** The petition alleges in part:

The refusal to furnish an indigent defendant in a capital case with the resources to obtain sufficient psychiatric evaluation rendered defense counsel unable to provide effective assistance, not only as to the possible defense of insanity, but also as to the existence of a mental condition as a mitigating circumstance. This refusal of psychiatric assistance constitutes a denial of due process, and because of the indigency of the defendant, also constitutes a denial of equal protection in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

**17.** Respondents contend that defense counsel retained a psychologist who supplied test results to the sanity commission, and that the defense did not use the results of the tests, which Sonnier had introduced during the penalty stage of the first trial, during the second sentencing trial as a deliberate trial tactic. Brief for Appellee, at 18–19. Because our cases require that a defendant both raise the issue of mental incapacity and lack the resources to procure evidence because of indigency, *Davis v. United States,* 413 F.2d 1226, 1229 n. 5 (5th Cir.1969), these allegations, if established, would defeat the claim.

view, we would not lightly disregard the Louisiana Supreme Court's finding that the trial court did not abuse its discretion. *Cf. Maggio v. Fulford,* —— U.S. ——, 103 S.Ct. 2261, 2265, 76 L.Ed.2d 794 (1983) (court may not disregard state court finding of competency unless conclusions not fairly supported by record).

We also reject Sonnier's claim that the state bore a constitutional obligation to appoint a psychiatric expert to establish that his mental condition was a circumstance mitigating the crime. We reiterate that mental capacity was not "seriously in issue," and note the Louisiana Supreme Court's observation that the record does not indicate that Sonnier suffered a "mental disease or incapacity." *State v. Sonnier,* 402 So.2d at 661. In these circumstances, we do not find that the state thwarted any effort by Sonnier to establish a mitigating circumstance based on mental incapacity.[18]

CONCLUSION.

We have examined each of Sonnier's arguments and find them meritless. The judgment of the district court is hereby AFFIRMED, and the stay of execution is hereby VACATED.

---

**18.** We also think it implicit in our cases that the state would bear no obligation to provide expert support for a defense unless a defendant asserted it. *See Davis v. United States,* 413 F.2d at 1229 n. 5 (constitution may require government to provide expert assistance where indigent defendant properly raises defense and cannot procure adequate evidence); *cf. Davis v. Alabama,* 596 F.2d at 1216 n. 5 (defendant does not place sanity "seriously in issue" by waiting to request psychiatric evaluation until the day of trial). We find no indication in the record that Sonnier raised mental incapacity as a mitigating circumstance or requested psychiatric evaluation in aid of such a claim. In light of the state trial court's denial of the motion for appointment of a psychiatric expert, however, we decline to rely on this ground because we have held, in analogous circumstances, that renewing the request would have been futile. *See Barnard v. Henderson,* 514 F.2d 744, 746 (5th Cir.1975).