(No. 60911.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES FREE, Appellant.

*Opinion filed April 4, 1986.—Rehearing denied June 2, 1986.*

SIMON, J., dissenting.

Charles M. Schiedel, Deputy Defender, and Lawrence J. Essig, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

This appeal was taken from the order of the circuit court of Du Page County dismissing the defendant's petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*). The defendant, James Free, was found guilty by a jury of one count of

murder, one count of attempted murder, and two counts of attempted rape. At the defendant's sentencing hearing, the jury determined there were statutory aggravating factors (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(6)(c)) and found no factors in mitigation sufficient to preclude imposition of the death penalty. The defendant was sentenced to death. This court upheld the convictions and sentence on the defendant's direct appeal (*People v. Free* (1983), 94 Ill. 2d 378), and the Supreme Court denied his petition for a writ of *certiorari* (*Free v. Illinois* (1983), 464 U.S. 1004, 78 L. Ed. 2d 701, 104 S. Ct. 514). Following the circuit court's dismissal of the post-conviction petition, we allowed the State's motion to transfer the defendant's appeal to this court under section 9—1(i) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(i)) and our Rule 302(b) (87 Ill. 2d R. 302(b)).

The evidence showed that the defendant, in the early morning of April 24, 1978, confronted Lori Rowe and Bonnie Serpico with a gun in the office building where the two women were night workers. Rowe testified that the defendant ordered them to disrobe, saying that he wanted to rape them. He forced his victims to a back room, tied Rowe's hands and feet with rope, and then led Serpico to an adjoining room. Rowe testified that the defendant returned to where she was lying when he discovered that she had loosened the rope binding her feet. Rowe said that, as Free pulled on the rope around her feet, she heard Serpico run from the other room. Free ran after Serpico and seconds later Rowe heard a gunshot. Rowe testified that the defendant ran back and shot her. She was not fatally wounded and was able to call the police after the defendant left, but Serpico died from loss of blood due to a gunshot wound.

Free argues first that the prosecution considered improper factors in deciding to initiate the death penalty proceedings against him, and that consequently the sen-

tence was imposed in an arbitrary and capricious manner prohibited by the Supreme Court's decision in *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909. The defendant concludes this after comparing his sentence with the one imposed in *People v. La Pointe* (1981), 88 Ill. 2d 482, where Phillip La Pointe had been prosecuted for a murder and armed robbery unrelated to the crimes here by the same assistant State's Attorney who prosecuted Free. Although La Pointe was eligible for the death penalty upon his convictions, the prosecutor did not seek the imposition of the death sentence because, as was explained in the State's brief opposing Free's petition for a writ of *certiorari* to the Supreme Court, the prosecutor "may well have reasonably concluded that a jury or judge would not impose the death penalty on a young-looking, eighteen year old defendant [La Pointe] with much stronger evidence of a real drug depending [*sic*] life-style than that involved in the *Free* case, together with all the other circumstances in the case." From this, Free says that the prosecutor's decision whether to seek the imposition of the death penalty was based on the factors of age, physical appearance and general life-style, which he claims resulted in an arbitrary and capricious imposition of his sentence.

Free offers only the circumstances in *La Pointe*, where the death penalty could have been but was not imposed, to support his claim that the prosecution was motivated in its decision by arbitrary and capricious factors. Yet in *Pulley v. Harris* (1984), 465 U.S. 37, 45, 79 L. Ed. 2d 29, 39-40, 104 S. Ct. 871, 879, and in *Jurek v. Texas* (1976), 428 U.S. 262, 276, 49 L. Ed. 2d 929, 941, 96 S. Ct. 2950, 2958, the Supreme Court specifically rejected the contention that *Gregg,* upon which the defendant relies, stood for the proposition that a reviewing court should compare the sentence in the appeal before it with the penalties imposed in similar cases upon the

defendant's demand. The court was satisfied that the safeguards found in the California and Texas death penalty statutes considered in *Pulley* and *Jurek* made proportionality review "constitutionally superfluous." (465 U.S. 37, 49, 79 L. Ed. 2d 29, 39, 104 S. Ct. 871, 879.) Our statute, *inter alia*, requires the State to establish that statutory aggravating factors exist, allows the defendant the opportunity to present evidence in mitigation, and provides an automatic review of the death sentence by this court (Ill. Rev. Stat. 1977, ch. 38, par. 9—1 *et seq.*), which are the safeguards which the court in *Pulley* found sufficient, without comparative review, "to promote the evenhanded, rational, and consistent imposition of death sentences under law." (*Pulley v. Harris* (1984), 465 U.S. 37, 49, 79 L. Ed. 2d 29, 39, 104 S. Ct. 871, 879, quoting *Jurek v. Texas* (1976), 428 U.S. 262, 276, 49 L. Ed. 2d 929, 941, 96 S. Ct. 2950, 2958.) The conclusion to be drawn is that there need not be a comparative review of the sentence imposed in *La Pointe* and the sentence here.

Moreover, in *Gregg* the Supreme Court, in affirming the constitutionality of the discretionary authority provided under the Georgia death penalty statute, stated:

"At each of these [discretionary] stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. *** Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution." *Gregg v. Georgia* (1976), 428 U.S. 153, 199, 49 L. Ed. 2d 859, 889, 96 S. Ct. 2909, 2937.

This court has repeatedly upheld as constitutional the discretionary authority allowed prosecutors to seek the death penalty under our statute. (*E.g., People v. Lewis* (1984), 105 Ill. 2d 226, 252; *People v. Mack* (1984), 105 Ill. 2d 103, 115; *People v. Gaines* (1984), 105 Ill. 2d 79,

95; *People v. Kubat* (1983), 94 Ill. 2d 437, 501-02; *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531.) In *Lewis*, this court stated:

" 'It is not [in] every case of murder that a prosecutor may seek the death penalty. He may do so only when one or more of the seven aggravating factors listed under section 9—1(b) of the Criminal Code of 1961 [citation] is present. It is [our] view that these seven aggravating factors constitute objective standards under which the prosecutor may *seek* the death penalty. *** The prosecutor only triggers the procedure to be followed and then only when the evidence establishes that one or more of the aggravating factors is present.' 88 Ill. 2d 128, 172 (Moran, J., concurring)." 105 Ill. 2d 226, 252.

Here it is clear that there were statutory aggravating factors: murder committed in the course of a burglary and attempted rape. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(6)(c); *People v. Free* (1983), 94 Ill. 2d 378, 418-19; *People v. Walker* (1982), 91 Ill. 2d 502, 511.) There is nothing in this record to suggest that the prosecutor's decision to seek the death penalty was based on the defendant's physical appearance or general life-style, or based on the defendant's age beyond the statutory requirement that he have "attained the age of 18 or more" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)). The prosecutor's decision cannot reasonably be attributed to circumstances other than the evidence of the two aggravating factors, and then to the prosecutor's perception of the likelihood that the jury would consider a death sentence appropriate.

Free contends next that the trial court erred in not conducting an evidentiary hearing to determine whether he was denied a fair trial due to discriminatory housing policies which a Federal district court in an unrelated case found to exist in Du Page County and which the defendant says denied him a venire drawn from a fair

cross-section of the community. (U.S. Const., amend. VI; *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.) In *Hope, Inc. v. County of Du Page* (7th Cir. 1983), 717 F.2d 1061, *rev'd on other grounds on rehearing en banc* (1984), 738 F.2d 797, the United States Court of Appeals for the Seventh Circuit upheld the factual finding of the district court that Du Page County engaged in discriminatory zoning practices that barred minorities and lower-income groups from establishing residences in the county. Free argues that the discriminatory zoning practices resulted in a venire that had a disproportionately low representation of racial minorities and lower-income groups.

In *Duren v. Missouri* (1979), 439 U.S. 357, 364, 58 L. Ed. 2d 579, 586-87, 99 S. Ct. 664, 668, the Supreme Court enunciated a three-step analysis to determine whether the "fair cross-section" requirement of *Taylor* has been violated: the group which the defendant claims was excluded from his venire must be a distinctive group in the community; representation of this group was not fair and reasonable in proportion to the population of the community; and lastly, the disproportionate representation resulted from systematic exclusion of the group in the jury-selection process. The defendant alleges that the housing policies of Du Page County excluded minorities and lower-income groups and yet unenviably, at the same time, he is compelled under *Duren* to argue that representation of these groups was not fair and reasonable in proportion to the population of the community. The position is not tenable. If in fact the discrete group is not present in the community, or present in small numbers because of discriminatory practices as in *Hope,* the defendant simply would not be able to establish under *Duren* that there was an unfair or unreasonable representation of the group in his venire or that the underrepresentation resulted from a systematic exclusion from

the jury-selection process.

Whether Du Page County engaged in discriminatory housing zoning practices is, of course, not a question on this appeal. While courts can in no way condone discriminatory housing practices, such practices are not of themselves constitutional cause for reversing convictions of all defendants tried by juries during the existence of the discriminatory housing practices. In a criminal proceeding an accused has the constitutional right only to a venire drawn from a fair cross-section of the community. U.S. Const., amend. VI; *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.

In a related argument, the defendant says he was denied the effective assistance of counsel because the attorney who represented him on the post-conviction petition failed to attach to the amended petition affidavits, records, or other evidence to support the allegation that Free was denied a venire drawn from a fair cross-section of the community. The Post-Conviction Hearing Act states that the "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." (Ill. Rev. Stat. 1983, ch. 38, par. 122—2.) It is incumbent upon the defendant under section 122—2 to identify with reasonable certainty the available evidence and how it is to support the allegation in the petition. (*People v. Curtis* (1971), 48 Ill. 2d 25, 28; *People v. Ashley* (1966), 34 Ill. 2d 402, 411.) The defendant here has not identified any independent evidence to support the allegation that Du Page County engaged in discriminatory housing policies or that such policies resulted in a venire that did not represent a fair cross-section of the community. He instead relies on the findings of the court in *Hope*. Judicial notice of the findings in other proceedings, however, is improper unless the parties in both proceedings are the same. (*Vulcan Materials Co. v. Bee Construction*

(1983), 96 Ill. 2d 159, 166; *Walsh v. Union Oil Co.* (1972), 53 Ill. 2d 295, 299-300.) That the record does not show there was an unfair–cross-section venire does not demonstrate a denial of the right to the effective assistance of counsel when there is no showing that evidence of an improper venire was available to counsel. *People v. Gaines,* (1984), 105 Ill. 2d 79, 96.

Free also argues that he was denied the effective assistance of counsel because of alleged conflicts of interest of the public defender of Du Page County and of the assistant public defender who represented Free on the post-conviction petition. The record shows that the defendant filed a *pro se* petition to which a request was appended that counsel be appointed to represent him. The court appointed the public defender of Du Page County to represent Free on his petition, but Public Defender Frank Wesolowski informed the court that he had represented the mother-in-law of the murder victim, Bonnie Serpico, in an earlier, unspecified conservatorship proceeding and that, in the course of that representation, he had met the victim "four to six times" when she drove her mother-in-law to Wesolowski's office.

After he was informed of Wesolowski's prior contact with the victim, Free asked the court to appoint other counsel. The court, in denying the request, reasoned that an assistant public defender could be assigned to the representation who would not be compromised by Wesolowski's acquaintance with the victim.

Assistant Public Defender Eugene Wojcik was assigned to represent the defendant, but, while familiarizing himself with the trial court record, he recognized the name of Kenneth Joswiak, whom he had represented in an unrelated criminal matter. Wojcik recalled that Joswiak had testified adversely to the defendant at a hearing on a motion to suppress prior to Free's trial. Joswiak was incarcerated at the same facility as Free, and

an incident occurred in which Joswiak allegedly threatened Free, who, in turn, made inculpating statements concerning the charges against himself. Joswiak testified at the preliminary hearing to the inculpating statements made by the defendant, but the court suppressed the statements as involuntary because of Joswiak's threats.

Assistant Public Defender Wojcik made a disclosure of his representation of Joswiak to the defendant, and Free subsequently presented a motion for appointment of new counsel. During argument on the motion, the assistant public defender assured the court that his loyalty and commitment to the defendant were not affected by his earlier representation of Joswiak. The court denied defendant's motion, and Wojcik was granted time to amend the defendant's *pro se* petition.

The constitutional guarantee of effective assistance of counsel implicitly includes an assurance that the defendant will enjoy the attorney's undivided loyalty, free from conflicting interests or inconsistent obligations. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Washington* (1984), 101 Ill. 2d 104; *People v. Franklin* (1979), 75 Ill. 2d 173.) When a claim of ineffective representation based on a conflict of interest is made, the defendant need not demonstrate prejudice when an actual or potential conflict of professional interest is shown. Prejudice will be presumed. (*People v. Franklin* (1979), 75 Ill. 2d 173, 176; *People v. Coslet* (1977), 67 Ill. 2d 127, 133; *People v. Stoval* (1968), 40 Ill. 2d 109, 113.) This court has held that when an attorney is disqualified due to a conflict of interest another attorney from the same law firm may not assume the representation (*People v. Fife* (1978), 76 Ill. 2d 418), but the disqualification of one public defender will not necessarily disqualify all members of that office (*People v. Miller* (1980), 79 Ill. 2d 454; *People v. Robinson* (1979), 79 Ill. 2d 147). In such cases a case-by-case inquiry must be

made to determine whether competing or differing interests will preclude the representation by the public defender's office. *People v. Nelson* (1980), 82 Ill. 2d 67, 73, citing *People v. Miller* (1980), 79 Ill. 2d 454, 462.

Public Defender Wesolowski did not have a professional association or interest as to the victim; he knew her only from the occasions on which she would drive her mother-in-law to his office. Wesolowski informed the court that he had seen the victim "four to six times." It is only in instances where there is a conflict in professional interests that this court will hold that prejudice need not be shown by the defendant. (*People v. Davis* (1983), 97 Ill. 2d 1, 16; *People v. Lewis* (1981), 88 Ill. 2d 429, 438.) Further, on this record we judge that no prejudice resulted from Wesolowski's contacts with the victim. The circuit court correctly concluded that an assistant defender from the Du Page County public defender's office could continue the representation because even the possibility of a conflict of interest due to Wesolowski's involvement was remote and unlikely. *People v. Robinson* (1979), 79 Ill. 2d 147, 159.

We must now consider the performance of Assistant Public Defender Wojcik in light of his representation of Joswiak, who was an adverse witness at Free's preliminary hearing. In a situation where defense counsel has represented a State's witness, a *per se* conflict of interest will not be held to exist unless the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of the defendant. (*People v. Robinson* (1979), 79 Ill. 2d 147, 161; *People v. Strohl* (1983), 118 Ill. App. 3d 1084, 1092.) The record does not formally show when Wojcik's representation of Joswiak ended, but it would be unreasonable under the circumstances to presume that the assistant public defender had a continuing professional relationship with Joswiak after his testimony was

suppressed. That Joswiak's testimony was suppressed before the defendant's trial and that Wojcik did not undertake the representation of Free until the post-conviction petition was filed supports the notion he no longer represented Joswiak.

Where a *per se* conflict of interest is not established, it is the defendant's burden to show an actual conflict of interest and to demonstrate prejudice. (*People v. Davis* (1983), 97 Ill. 2d 1, 16.) The standard for showing a want of effective assistance of counsel stated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, which was adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, is that the defendant must establish that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, were it not for counsel's professional shortcomings, the result of the proceeding would have been different. At the hearing on the motion to replace him, Wojcik assured the court that his commitment and loyalty to the defendant was in no way diminished by his other representation. Upon appointment, he requested time to closely review the record and amend the defendant's *pro se* petition. The record shows that he consulted with the defendant and the attorney who represented Free on direct appeal, and the amended petition he filed contained eight claims of error not raised in the original petition. The defendant says that counsel's performance should be judged inferior because all but one of the additional allegations, Wojcik's own alleged incompetence, were raised and dismissed on direct appeal. However the defendant does not say what other allegation might have been raised, and it would be unreasonable for a court to speculate what errors may appear in the record or what another attorney might have claimed in order to substantiate a charge of ineffective assistance of counsel. (*People v.*

*Cunningham* (1985), 107 Ill. 2d 143, 150; *People v. Nelson* (1980), 82 Ill. 2d 67, 75.) The defendant has failed to meet his burden under *Strickland* to show actual prejudice. The Supreme Court said: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2070; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 426.

The defendant claims that he was denied due process by our refusal on his direct appeal to consider the allegation that the testimony of a probation officer was improperly admitted during the second phase of his sentencing hearing. Free argued on his direct appeal that Debra Ahlstrand improperly was allowed to testify as to a presentence investigation and report which, the defendant says, included prejudicial and inflammatory references to the victim's surviving family. This court held that the defendant's failure to object to the testimony waived the right to raise the question in this court. *People v. Free* (1983), 94 Ill. 2d 378, 425.

The record shows that the defendant objected to introduction of the report itself into evidence on the ground that it contained hearsay and was conclusory. The circuit court sustained the objection and did not admit the report in evidence, but the court refused the defendant's motion that Ahlstrand be barred from testifying, stating to defense counsel that any objection to her testimony would be considered "on a question by question basis." No objection, however, was made that Ahlstrand's testimony concerning the surviving family was prejudicial or inflammatory. As this court stated upon the direct appeal, a timely objection at trial would have allowed the trial court the opportunity to avoid any prejudice, and the defendant's failure to object operated to waive this issue before the reviewing court. (*People v.*

*Lewis* (1981), 88 Ill. 2d 129; *People v. Carlson* (1980), 79 Ill. 2d 564.) The defendant has not furnished any persuading reason to reconsider our earlier disposition.

Finally the defendant argues that a recent decision warrants our considering again the argument presented on his direct appeal that he was denied a fair trial because jurors excluded under *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, resulted in a conviction-prone jury. Free cites *Grigsby v. Mabry* (8th Cir. 1985), 758 F.2d 226, *cert. granted* (1985), 474 U.S. 816, 88 L. Ed. 2d 48, 106 S. Ct. 59, decided after his direct appeal, in which the court judged that a death-qualified jury is in fact conviction-prone and therefore is violative of the fair–cross-section–of-the- –community requirement established in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692.

We examined, and rejected, the reasoning of *Grigsby* in our decision in *People v. Collins* (1985), 106 Ill. 2d 237, 278-79. We noted that *Grigsby* contradicts the holding of the United States Court of Appeals for the Fourth Circuit in *Keeten v. Garrison* (4th Cir. 1984), 742 F.2d 129, 134, where it was held that "the state may thus exclude [*Witherspoon*-qualified] jurors without violating a defendant's right to a fair cross-section of the community." (742 F.2d 129, 133-34.) (See also *Sonnier v. Maggio* (5th Cir. 1983), 720 F.2d 401, 407-08, *cert. denied* (1984), 465 U.S. 1051, 79 L. Ed. 2d 726, 104 S. Ct. 1331.) Too, the court in *Foster v. State* (1985), 304 Md. 439, 465, 499 A.2d 1236, 1249, stated:

> "We flatly disagree with the Eighth Circuit's holding in the *Grigsby* case. Preliminarily, we question whether so-called *Witherspoon*-excludables constitute a 'distinct' group or class in the community within the meaning of [*Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, and *Taylor v. Louisiana* (1975), 419

U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692]. *** More basically, however, we do not believe that the Eighth Circuit's reasoning can be squared with the opinions of the Supreme Court. The view that the right to a representative jury, under the principles enunciated in *Duren* and *Taylor*, includes the right to have biased jurors, is inconsistent with *Lockett v. Ohio* [(1978), 438 U.S. 586, 596-97, 57 L. Ed. 2d 973, 984-85, 98 S. Ct. 2954, 2960], where the Court stated:

'*** Nothing in *Taylor*, however, suggests that the right to a representative jury includes the right to be tried by jurors who have explicitly indicated an inability to follow the law and instructions of the trial judge.'

Furthermore, the Eighth Circuit's theory, that a jury bias against the prosecution is irrelevant, cannot be reconciled with *Wainwright v. Witt* [(1985), 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844]."

The Maryland court also cited in support of *Witherspoon*: *Spinkellink v. Wainwright* (5th Cir. 1978), 578 F.2d 582, 593-96; *Smith v. Balkcom* (5th Cir. 1981), 660 F.2d 573, *modified* (1982), 671 F.2d 858 (1982); *Keeten v. Garrison* (4th Cir. 1984), 742 F.2d 129; *People v. Fields* (1983), 35 Cal. 3d 329, 342-54, 673 P.2d 680, 687-95, 197 Cal. Rptr 803, 810-19; *State v. Oritz* (1975), 88 N.M. 370, 372-74, 540 P.2d 850, 852-54; *Commonwealth v. Szuchon* (1984), 506 Pa. 228, 484 A.2d 1365.

Further, the Supreme Court, aware of the *Grigsby* and *Keeten* decisions, in *Wainwright v. Witt* (1985), 469 U.S. 412, 423-26, 83 L. Ed. 2d 841, 851-52, 105 S. Ct. 844, 852, clarified the rule concerning when jurors could be excused due to an unwillingness to consider the death penalty, which led this court to state:

"We do not believe that the Supreme Court would be clarifying the standard *** if the actual exclusion of the juror would result in the defendant being denied his constitutional rights. In light of the Supreme Court's decision in *Wainwright v. Witt,* we adhere to our position and

reject the argument that the qualification of jurors pursuant to *Witherspoon* results in a conviction-prone jury so as to deny a defendant his constitutional rights." (*People v. Collins* (1985), 106 Ill. 2d 237, 279.)

See also *People v. Wright* (1986), 111 Ill. 2d 128, 156-57.

For the reasons stated, we affirm the judgment of the circuit court of Du Page County denying the defendant's post-conviction petition. The clerk of this court is directed to enter an order fixing Wednesday, the 24th day of September, 1986, as the date on which the sentence of death entered in the circuit court is to be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be furnished by the clerk of this court to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

The defendant was convicted by a jury which had been death-qualified. For the reasons explained in my dissenting opinion in *People v. Wright* (1985), 111 Ill. 2d 128, 170, I believe that the defendant was deprived of a fair trial, and I would grant the petition for post-conviction relief and remand for a new trial. In addition, for the reasons stated in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and in *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part), I believe that the Illinois death penalty statute is unconstitutional, and I would therefore vacate the death sentence imposed in this case.