585 N.E.2d 115 (1991)
146 Ill.2d 44
165 Ill.Dec. 719
The PEOPLE of the State of Illinois, Appellee,
v.
Willie E. ENOCH, Appellant.
No. 70254.
Supreme Court of Illinois.
December 19, 1991.
Rehearing Denied February 3, 1992.
*117 Sheri J. Engelken, Leslie M. Smith, Sara R. Slaughter and David P. Berten, Kirkland & Ellis, Chicago, for appellant.
Roland W. Burris, Atty. Gen., Springfield (Rosalyn Kaplan, Solicitor Gen., and Terence M. Madsen and Nathan P. Maddox, Asst. Attys. Gen., of counsel), for the People.
Justice CLARK delivered the opinion of the court:
Following a jury trial in the circuit court of Peoria County, defendant, Willie E. Enoch, was convicted of murder, aggravated kidnapping and attempted rape. Defendant waived a jury at the death penalty hearing, and the circuit judge found defendant eligible for the death penalty based on two felony murder convictions: murder in the course of aggravated kidnapping and murder in the course of attempted rape (Ill.Rev.Stat.1983, ch. 38, par. 9-1(b)(6)). Subsequently, the judge found no mitigating factors sufficient to preclude the imposition of the death penalty, and sentenced defendant to death. On direct appeal to this court (Ill. Const.1970, art. VI, § 4(b); 87 Ill.2d R. 603), defendant's convictions and death sentence were affirmed. (People v. Enoch (1988), 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124.) The United States Supreme Court denied defendant's petition for writ of certiorari. Enoch v. Illinois (1988), 488 U.S. 917, 109 S.Ct. 274, 102 L.Ed.2d 263.
Thereafter, on April 13, 1989, defendant filed a pro se petition for post-conviction relief under the Post-Conviction Hearing Act (Ill.Rev.Stat.1983, ch. 38, par. 122-1 et seq.). The circuit court appointed the public defender of Peoria County to represent defendant on his petition for post-conviction relief. On January 22, 1990, following numerous delays in the filing of an amended petition for post-conviction relief, the State moved to dismiss defendant's pro se petition. On January 24, 1990, defendant moved to substitute the law firm of Kirkland & Ellis as counsel for defendant. Thereafter, on March 19, 1990, defendant filed this amended petition for post-conviction relief. This amended petition did not *118 adopt, re-allege or in any way refer to the allegations set forth in defendant's original pro se motion.
In his amended petition for post-conviction relief, defendant raised three issues. First, defendant claimed that he was denied his right to effective assistance of counsel because his trial attorney, Mark Rose, had a per se conflict of interest, and because his actual performance fell below the constitutional standard necessary to constitute effective assistance of counsel. Second, defendant argued that his due process rights were violated when this court retroactively applied a "new waiver rule" in his case. Third, defendant argued that the Illinois death penalty statute was unconstitutional.
Subsequently, the State filed a motion to dismiss defendant's pro se and amended petition for post-conviction relief. On April 19, 1990, the circuit court, without having held an evidentiary hearing on this matter, granted the State's motion to dismiss the pro se petition and the amended petition. On appeal directly to this court (134 Ill.2d R. 651), only those claims in defendant's amended petition for post-conviction relief are before us.
The facts in this case are adequately set forth in this court's opinion on defendant's direct appeal (People v. Enoch (1988), 122 Ill.2d 176, 119 Ill.Dec. 265, 522 N.E.2d 1124), and will be repeated here only when necessary.
Initially we note that an action for post-conviction relief represents a collateral attack on a prior judgment; it is not an appeal from an underlying conviction and sentence. (People v. Ruiz (1989), 132 Ill.2d 1, 9, 138 Ill.Dec. 201, 547 N.E.2d 170; People v. Free (1988), 122 Ill.2d 367, 377, 119 Ill.Dec. 325, 522 N.E.2d 1184; People v. James (1986), 111 Ill.2d 283, 290, 95 Ill.Dec. 486, 489 N.E.2d 1350.) To be entitled to post-conviction relief, a defendant must establish a substantial deprivation of Federal or State constitutional rights in the proceedings that produced the judgment under attack. (Ill.Rev.Stat.1985, ch. 38, par. 122-1.) Rulings on issues that were previously raised at trial and on direct appeal are res judicata, and issues that could have been raised in the original proceedings, but were not, will be deemed waived. Ruiz, 132 Ill.2d at 9, 138 Ill.Dec. 201, 547 People v. Silagy (1987), 116 Ill.2d 357, 365, 107 Ill.Dec. 677, 507 N.E.2d 830.
Defendant argues that he was denied his sixth amendment right to effective assistance of counsel because his trial counsel, Mark Rose, had previously represented one of the State's main witnesses, Derek Proctor. On November 14, 1983, immediately prior to jury selection, the trial judge stated on the record that it had come to the court's attention that Rose had previously represented Proctor on a felony matter in 1979. The following colloquy ensued between the trial judge and Rose:
"Q. [Trial Judge]: Mr. Rose, do you feel that the existence of your prior relationship with this proposed witness would cause you any difficulty insofar as your representation of the defendant, Willie Earl Enoch?
A. [Mark Rose]: I don't believe so your honor.
Q. Has there been an on-going relationship of attorney-client between you and Mr. Proctor?
A. Only that I believe Mr. Proctor has been in the office, and I believe it is since the date of this, although I can't be sure, concerning possibly hiring me to represent him in matters. But so far as I recall, never represented him privately, and, I believe, this may be the only occasion that, in fact, I represented him.
Q. There is no attorney-client relationship, is that right?
A. That's correct.
Q. To the best of your recollection I don't mean to put words in your mouthbut my understanding is, to the best of your recollection, your attorney client relationship with Mr. Proctor ended with the conclusion of this 1979 case, is that right?

A. I believe so. I don't recall representingin fact, to be truthful, I didn't remember representing him in that *119 case until I procured the Certified Copy of Conviction this morning.

Q. Do you have any specific recollection of your representation of Mr. Proctor?
A. Now I do.
Q. Are they recollection, or do you just know it from the fact?
A. No, I recall the incident, and I recall the codefendant in the case.
Q. Just to be clear, that relationship ended in 1979, is that right?
* * * * * *
A. Yes.
Q. You don't feel your effectiveness is impaired in any way, is that right?
A. No." (Emphasis added.)
Following this exchange, the trial judge stated "that this state of affairs * * * does not constitute a conflict of interest nor, in fact, does any conflict of interest exist based on the representation by Mr. Rose, which are amply supported by the record." We agree.
The right to effective assistance of counsel under the sixth amendment to the Constitution of the United States entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. (People v. Flores (1989), 128 Ill.2d 66, 83, 131 Ill.Dec. 106, 538 N.E.2d 481, citing Glasser v. United States (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; People v. Washington (1984), 101 Ill.2d 104, 77 Ill.Dec. 770, 461 N.E.2d 393.) To ensure that the accused is not denied this sixth amendment guarantee of conflict-free representation, this court has adopted a per se conflict of interest rule "whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others." (People v. Coslet (1977), 67 Ill.2d 127, 133, 7 Ill.Dec. 80, 364 N.E.2d 67, citing People v. Stoval (1968), 40 Ill.2d 109, 112, 239 N.E.2d 441.) Moreover, in situations where defense counsel has previously represented a prosecution witness, this court has repeatedly held that "a per se conflict of interest exists if `the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of the defendant.'" (Emphasis added.) (People v. Flores, 128 Ill.2d at 83, 131 Ill.Dec. 106, 538 N.E.2d 481, quoting People v. Free (1986), 112 Ill.2d 154, 168, 97 Ill.Dec. 396, 492 N.E.2d 1269; see also People v. Thomas (1989), 131 Ill.2d 104, 111, 137 Ill.Dec. 1, 545 N.E.2d 654; People v. Robinson (1979), 79 Ill.2d 147, 161, 37 Ill.Dec. 267, 402 N.E.2d 157; People v. Strohl (1983), 118 Ill.App.3d 1084, 1092, 74 Ill.Dec. 774, 456 N.E.2d 276.) In these per se conflict of interest situations, "the defendant need not show prejudice in order to justify a reversal of his conviction if the attorney representing him has an actual or possible conflict of professional interests." (Thomas, 131 Ill.2d at 111, 137 Ill.Dec. 1, 545 N.E.2d 654; People v. Washington (1984), 101 Ill.2d 104, 110, 77 Ill.Dec. 770, 461 N.E.2d 393.) Prejudice is presumed. Thomas, 131 Ill.2d at 111, 137 Ill.Dec. 1, 545 N.E.2d 654; Free, 112 Ill.2d at 167, 97 Ill.Dec. 396, 492 N.E.2d 1269; Coslet, 67 Ill.2d at 133, 7 Ill.Dec. 80, 364 N.E.2d 67; Stoval, 40 Ill.2d at 113, 239 N.E.2d 441.
In this case, we agree with the State that Rose's previous representation of Proctor in 1979, four years prior to defendant's trial, does not establish that a per se conflict of interest existed between Rose and defendant. As stated above, "[w]here defense counsel has represented a State's witness, a per se conflict of interests exists if the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of defendant." (Emphasis added.) (Thomas, 131 Ill.2d at 111, 137 Ill. Dec. 1, 545 N.E.2d 654; Flores, 128 Ill.2d at 83, 131 Ill.Dec. 106, 538 N.E.2d 481; Free, 112 Ill.2d at 168, 97 Ill.Dec. 396, 492 N.E.2d 1269; Washington, 101 Ill.2d at 110-13, 77 Ill.Dec. 770, 461 N.E.2d 393; see also Robinson, 79 Ill.2d at 161, 37 Ill.Dec. 267, 402 N.E.2d 157; Strohl, 118 Ill.App.3d at 1092, 74 Ill.Dec. 774, 456 N.E.2d 276.) Based on Rose's unequivocal responses to *120 the trial judge's questions regarding his professional relationship with Proctor, we find no evidence indicating that Rose's relationship with Proctor was contemporaneous with Rose's representation of defendant. Rose stated that his professional relationship with Proctor ended in 1979 and that there was no current attorney-client relationship between himself and Proctor. Thus, defendant's assertion that a per se conflict of interest existed which denied him his right to effective assistance of counsel is baseless.
Defendant also argues that his appellate counsel, Robert Seeder, was ineffective for failing to raise the per se conflict of interest claim on direct appeal. The State argues that defendant has waived the issue of ineffective assistance of appellate counsel because he failed to include it in either his pro se petition for post-conviction relief or his amended petition for post-conviction relief. Regardless, based on our discussion above that there was no per se conflict of interest between defendant and Rose, we find that appellate counsel was not ineffective for failing to raise a meritless issue.
Defendant maintains that if we determine that Rose's prior representation of Proctor does not constitute a per se conflict of interest, defendant was nonetheless denied effective assistance of counsel as set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Specifically, defendant argues that Rose was ineffective for failing to investigate fully the facts suggesting that Proctor murdered the victim, Kay Burns; failed to investigate the contradictions in Proctor's version of events; failed to introduce evidence supporting defendant's defense that Proctor murdered the victim; failed to adequately cross-examine Proctor at trial; failed to question Proctor about the similarities between Proctor's prior sexual deviate assault conviction and the victim's murder; failed to call witnesses who would have testified to Proctor's prior history of violence; failed to question the police witnesses about why they considered Proctor a suspect in the victim's murder; and failed to even articulate to the jury defendant's defense that Proctor murdered the victim.
The State argues that defendant failed to raise a claim of ineffective assistance of counsel pertaining to Rose's prior representation of Proctor on direct appeal, and thus the issue is waived. (See People v. Neal (1990), 142 Ill.2d 140, 154 Ill.Dec. 587, 568 N.E.2d 808 (rulings on issues that were previously raised at trial and on direct appeal are res judicata, and issues that could have been raised in the original proceedings, but were not, will be deemed waived).) In addition, the State maintains that a review of the record indicates that defendant's claims are meritless. We agree.
Although the question of whether defendant received ineffective assistance of counsel for the reasons he lists above may be deemed waived by reason of failure to raise them on direct appeal (People v. Gaines (1984), 105 Ill.2d 79, 88, 85 Ill.Dec. 269, 473 N.E.2d 868), we note that the record clearly does not support defendant's contentions. Under Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, a defendant claiming ineffective assistance of counsel must show: (1) counsel's performance fell below an objective standard of reasonableness and (2) defendant was prejudiced. In this instance, defendant has failed to meet either prong of the Strickland standardnamely that Rose's performance fell below an objective standard of reasonableness, or that defendant was prejudiced.
First, after reviewing the record from defendant's trial, it is clear that Rose made every effort to discredit the prosecution's case, impeach the State's witnesses, including Proctor, and shift the blame for the murder from defendant to Proctor. Second, defendant claims that Rose failed to question Proctor about the similarities between Proctor's 1980 deviate sexual assault conviction and the victim's murder. Specifically, defendant argues that Rose should have "cross-examined Proctor regarding the similarities between the way Proctor had bound the victim in his deviate sexual assault case and the way [the victim's] hands had been bound." We disagree *121 both because Proctor's deviate sexual assault conviction is factually dissimilar from the victim's murder and because, generally, the limit to which a witness may be impeached on cross-examination with prior convictions is the introduction of certified copies of the convictions. (See People v. Montgomery (1971), 47 Ill.2d 510, 268 N.E.2d 695.) "In the process of questioning [the witness], in the court's discretion any matters appearing in the public record may be inquired into including the court, date, nature of offense, and sentence received." (Emphasis added.) (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 609.6, at 386 (5th ed. 1990).) However, once a witness admits he was so convicted, the impeachment has been completed. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 609.6, at 386 (5th ed. 1990).) In this case, because Rose impeached Proctor in the correct manner, we do not find that Rose acted unreasonably. Third, defendant contends that Rose should have called witnesses who would have testified to Proctor's prior history of violence. This contention, as the State correctly points out, is meritless given that defendant has failed to name these alleged individuals and attach affidavits or a summary of their alleged testimony which would support defendant's accusation. See Ill.Rev.Stat.1987, ch. 38, par. 122-2.
Further, even if we were to assume that Rose's performance fell below an objective standard of reasonableness, we nonetheless conclude, as this court did on direct appeal, that defendant has failed to establish actual prejudice. On direct appeal, this court noted the rule in Strickland that a court need not consider the performance component of an ineffective assistance of counsel claim before analyzing the prejudice component. (Enoch, 122 Ill.2d at 201-02, 119 Ill.Dec. 265, 522 N.E.2d 1124.) Consequently, this court held that, given the overwhelming evidence of defendant's guilt, defendant has failed to establish that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Specifically, this court stated:
"In view of the overwhelming evidence of the defendant's guilt, and of the aggravating circumstances, it cannot be reasonably contended that the results would possibly have been different but for the alleged substandard representation by counsel." (Enoch, 122 Ill.2d at 202, 119 Ill.Dec. 265, 522 N.E.2d 1124.)
As noted on direct appeal, the evidence of defendant's guilt was overwhelming, and thus there is no reasonable possibility that but for Rose's alleged errors the result would have been different. Defendant has failed to establish actual prejudice under the second prong of the standard set forth in Strickland, and we deny his claim.
Defendant next argues that he was denied his constitutional right to due process when this court retroactively applied a "new waiver rule" in his direct appeal. Defendant claims that at the time of his trial in November 1983, the law in Illinois was unclear as to whether defendant was required to file a post-trial motion for a new trial to preserve various issues for appeal. Accordingly, defendant failed to file a post-trial motion. On direct appeal, this court stated "the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal." (Enoch, 122 Ill.2d at 185-86, 119 Ill.Dec. 265, 522 N.E.2d 1124.) Defendant argues that the retroactive application of this "new waiver rule" violates his right to due process.
We disagree. On direct appeal, this court did not apply a new waiver rule, but rather reaffirmed the law in this State that "[b]oth a trial objection and a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (Enoch, 122 Ill.2d at 186, 119 Ill.Dec. 265, 522 N.E.2d 1124.) Although we cited four cases as support which were decided after defendant's trial, but before defendant's direct appeal (see Enoch, 122 Ill.2d at 186, 119 Ill.Dec. 265, 522 N.E.2d 1124 (citing People v. Shum (1987), 117 Ill.2d 317, 111 Ill.Dec. 546, 512 N.E.2d 1183, People v. Szabo (1986), 113 Ill.2d 83, 93, 100 *122 Ill.Dec. 726, 497 N.E.2d 995, People v. Porter (1986), 111 Ill.2d 386, 399, 95 Ill. Dec. 465, 489 N.E.2d 1329, and People v. Caballero (1984), 102 Ill.2d 23, 31, 79 Ill. Dec. 625, 464 N.E.2d 223)), we also explained that "[t]he requirement for a written post-trial motion is statutory, and the statute requires that a written motion for a new trial shall be filed by the defendant and that the motion for a new trial shall specify the grounds therefor. (Ill.Rev.Stat. 1983, ch. 38, par. 116-1.)" (Emphasis in original.) (Enoch, 122 Ill.2d at 187, 119 Ill.Dec. 265, 522 N.E.2d 1124.) This statutory requirement was in effect at the time of defendant's trial in November 1983, as was this court's holding in People v. Pickett (1973), 54 Ill.2d 280, 296 N.E.2d 856, that the failure to specify grounds for a new trial in a written motion for a new trial constitutes waiver of the issue on review in the absence of plain error. (See Enoch, 122 Ill.2d at 187, 119 Ill.Dec. 265, 522 N.E.2d 1124.) Parenthetically, we note that defendant apparently failed to raise this "new waiver rule" claim on direct appeal, even though the State had argued that defendant's failure to file a post-trial motion resulted in waiver of those issues. Clearly, defendant had the opportunity to raise this issue on direct appeal given the State's posture, and our prior decisions reaffirming the waiver rule in Shum, Szabo, Porter, and Caballero.
In addition, even assuming that we did in fact retroactively apply a new waiver rule in defendant's case on direct appeal, defendant was not prejudiced. On direct appeal, appellate counsel argued that trial counsel was ineffective for failing to file a post-trial motion and preserve numerous alleged trial errors for review. (See Enoch, 122 Ill.2d at 201, 119 Ill.Dec. 265, 522 N.E.2d 1124.) As previously stated, this court held that trial counsel's failure to file a post-trial motion did not prejudice defendant. Because defendant was not prejudiced by trial counsel's failure to file a post-trial motion, defendant obviously could not have been prejudiced by an alleged retroactive application of a "new waiver rule" which required the filing of the written motion.
Lastly, defendant argues that the Illinois death penalty statute is unconstitutional. Defendant argues that the Illinois death penalty statute violates article I, section 11, of the Illinois Constitution and the eighth amendment to the United States Constitution in that it removes all sentencing discretion from the sentencer. Specifically, defendant cites section 9-1(h) of the statute, which states that "[i]f the Court determines that there are no mitigating factors sufficient to preclude the imposition of the death sentence, the Court shall sentence the defendant to death" (emphasis added) (Ill.Rev.Stat.1989, ch. 38, par. 9-1(h)), as indicating that the sentencer has no discretion in sentencing. According to defendant, in this case where there is a "lingering identity question" as to the murderer, the sentencer should have discretion to decide whether to impose the death penalty.
The State, on the other hand, maintains that because these arguments could have been presented on direct appeal, defendant has waived them. (See People v. Neal (1990), 142 Ill.2d 140, 146, 154 Ill.Dec. 587, 568 N.E.2d 808.) Further, the State argues that there is no "lingering identity question" as to the murderer, for on direct appeal this court held that the evidence of defendant's guilt is "overwhelming." (Enoch, 122 Ill.2d at 202, 119 Ill.Dec. 265, 522 N.E.2d 1124.) The State does not specifically address defendant's assertion that the death penalty statute removes all discretion from the sentencer if the defendant is found eligible for the death penalty and there are no mitigating factors sufficient to preclude the imposition of the death penalty.
We agree with the State that defendant has waived his claims regarding the constitutionality of the Illinois death penalty statute. "The purpose of the post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction that have not already been adjudicated or could have been." (Emphasis added.) (People v. Silagy (1987), 116 Ill.2d 357, 365, 107 Ill.Dec. 677, 507 N.E.2d 830; People v. Gaines (1984), 105 Ill.2d 79, 87, 85 Ill.Dec. 269, 473 N.E.2d 868; People v. Williams (1970), 47 Ill.2d 1, *123 3, 264 N.E.2d 697.) On direct appeal, this court considered and rejected numerous constitutional challenges to the Illinois death penalty statute. Because defendant failed to raise on direct appeal the specific challenge he raises now, we find that he has waived review. In addition, we disagree with defendant's assertion that the sentencing authority is divested of discretion once defendant is found eligible for the death penalty. Pursuant to the statute, once a defendant is found statutorily eligible for the death penalty, the sentencing authority exercises its discretion in evaluating "any aggravating and any mitigating factors which are relevant to the imposition of the death penalty." (People v. Kubat (1983), 94 Ill.2d 437, 504, 69 Ill.Dec. 30, 447 N.E.2d 247, quoting Ill.Rev.Stat.1977, ch. 38, par. 9-1(c); see also People v. Free (1983), 94 Ill.2d 378, 427, 69 Ill.Dec. 1, 447 N.E.2d 218 ("We conclude that the sentencing body's discretion, under our statute, is suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action, satisfying Furman v. Georgia (1972), 408 U.S. 238, 33 L.Ed.2d 346, 92 S.Ct. 2726,* * *").) Based on a plain reading of the Illinois death penalty statute and this court's comments in Kubat and Free, we think it is evident that the sentencing authority is statutorily required to exercise discretion when deciding whether to sentence the accused to death.
For the foregoing reasons, we affirm the decision of the circuit court dismissing the defendant's petition for post-conviction relief. We direct the clerk of this court to enter an order setting Wednesday, March 11, 1992, as the date on which the sentence of death entered by the circuit court of Peoria County shall be carried out in the manner provided by law. (Ill.Rev.Stat. 1983, ch. 38, par. 119-5.) The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is confined.
Judgment affirmed.