NO. 4-02-0420

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DENNIS E. PROBST,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Jersey County

No. 02CF6

Honorable

Thomas G. Russell,

Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

On April 23, 2002, a jury convicted defendant, Dennis E. Probst, of unlawful delivery of cannabis (720 ILCS 550/5(d) (West 2002)).  On May 20, 2002, the trial court sentenced him to five years' imprisonment.  Defendant appeals, arguing (1) a 
per
 
se
 conflict violated his right to counsel in that his attorney had previously represented the State's confidential informant in a criminal matter; (2) the trial court committed reversible error by refusing to properly instruct the jury on his theory of the case; and (3) defense counsel failed to object to admission of a lab report and accompanying affidavit despite lack of foundation, in violation of his constitutional right to confront his accusers, and thus constituted ineffective assistance of counsel.  We affirm.

Lieutenant Frank Scoggins, police officer for the City of Jerseyville police department (department), testified that he had participated in an ongoing investigation of the house at 711 South Arch Street in Jerseyville, home to defendant and Debbie White.  Neighbors had complained about the amount of traffic in and out of the residence.  The investigation did not produce any reliable informants until the local drug task force provided Danny Moore.

Moore wanted help getting a couple of traffic tickets removed from his record.  Moore contacted Investigator Kenny Kallal of the Illinois Drug Task Force.  Moore informed Kallal that he knew someone who had cannabis and was willing to sell it.  Moore had worked with Kallal previously as an informant on drug buys.

On January 15, 2002, Moore called White and asked her if she had any cannabis for sale.  She indicated that she would have some the next day and that he should meet her in the parking lot of the local Wal-Mart because of police surveillance of the house shared by her and defendant.  

On January 16, the department conducted an undercover operation to attempt a purchase of cannabis.  Officers strip searched Moore and placed an audio surveillance device on his person.  No money or drugs were found in the search.  Officers then gave Moore $280 in marked money with which to make the purchase.  Officers anticipated that the transaction would occur in the Wal-Mart parking lot.  However, once Moore arrived at Wal-Mart, he called White, who indicated that the house was safe and that the transaction should instead occur there.

The audiotape of the transaction reflects the following.  When White met Moore in the parking lot, she indicated to Moore that he should "come to the house."  After Moore arrived at the house, he engaged in conversation with White and then proceeded to the bedroom, where he met defendant.  Moore counted out the $280 for defendant and then inquired whether he could get another ounce for a friend.  Defendant indicated that he was not sure and had to get to work.

Moore testified that after he gave the money to defendant, defendant gave him the bag of cannabis.  Moore returned from the residence and produced 53.6 grams of plant material later identified as cannabis.  Officers identified the substance as cannabis by smell and verified this finding by lab report and accompanying affidavit from the state crime lab.  

Officers stopped White for a traffic violation after she left the residence and found the marked money in her purse.  Officers later got a search warrant for the residence and arrested defendant.  The search yielded a scale and a jar smelling of cannabis in a bedroom.

Moore had previously dated Angel White, White's daughter and defendant's stepdaughter.  During that time, an incident occurred where defendant accused Moore of stealing $300.  Moore acknowledged that he had been accused of the theft but stated that such accusations were never proved.

At the jury instruction conference, defendant offered a jury instruction on mistake of fact.  That instruction provided that "[a] defendant's mistake as to a matter of fact is a defense if the mistake shows that the defendant did not have the knowledge necessary for the offense charged."  His theory at trial was that he believed that the $280 in buy money was in fact an attempt at satisfaction for the $300 that Moore had allegedly stolen.  Defendant denied delivering any cannabis.  He testified that he was not paying attention to what Moore was saying to him.  The trial court refused defendant's proffered instruction.

Before the State rested its case, it asked for admission of the lab report and accompanying affidavit identifying the substance seized as cannabis.  Defense counsel did not object, and the court admitted the evidence.

On the day of trial, defense counsel notified the court that a potential conflict of interest existed in that he had previously represented the State's key witness and undercover informant, Danny Moore, at a sentencing hearing on a burglary conviction.  The record states as follows:

"MR. PISTORIUS: *** During the lunch hour I checked with my office, *** the name Danny Moore wasn't something that stuck in my head.  I'm usually good at remembering names, but when I looked further at it I noticed it was Danny Lee Moore and that name did kinda [
sic
] hit me so I checked with my secretaries and indeed I had handled a sentencing case only.  It was a Calhoun County case that was a 98 case that Scott Schultz was handling and then when Scott became State's Attorney here then I took over Scott's files and in January of last year, *** I handled a resentencing to a Motion to Revoke and he was ultimately sent to the Department of Corrections.  It just literally came to me during the lunch hour and then coincidentally Kevin from the State's Attorney's Office talked to Mr. Moore and he likewise brought it up today about 12:30 p.m. so we both came to that conclusion at the same time.  I discussed this with my client about the prior representation, I haven't done anything for him since January of 2001 and had no contact with him and literally the only contact I had with him was that one sentencing hearing.  And I talked to Dennis and he has agreed to waive any potential conflict that may arise from that prior relationship.  And prior representation.

THE COURT:  Alright.  Any comments Ms. Kirbach?

MS. KIRBACH: No Your Honor.  I just would like Mr. Probst to waive that on the record is all.

THE COURT: Mr. Probst, do you waive any conflict on the record here?

DEFENDANT: Yes I do.

THE COURT: Okay.  You willing to have Mr. Pistorius continue to represent you is that right?

DEFENDANT: Yes.

THE COURT: Okay.  Thank you."

The State called Moore as its chief witness.  On cross-examination, defense counsel impeached Moore with the burglary conviction referenced above. 

A jury convicted defendant, and the trial court sentenced him as stated.  This appeal followed.

Defendant first argues that because his court-appointed counsel previously represented the State's key witness in a prior criminal case, a 
per
 
se
 conflict existed that violated Probst's right to counsel.  Because the issue is one of law, we review the issue 
de
 
novo
.  
People v. Miller
, 199 Ill. 2d 541, 544, 771 N.E.2d 386, 387 (2002).

The sixth amendment right to effective assistance of counsel (U.S. Const., amend. VI) includes the correlative right to conflict-free representation.  
People v. Graham
, 206 Ill. 2d 465, 472, 795 N.E.2d 231, 236 (2003).  In other words, a criminal defendant is entitled to the undivided loyalty of his counsel.  
People v. Enoch
, 146 Ill. 2d 44, 51-52, 585 N.E.2d 115, 119 (1991).  To succeed on an ineffective-assistance-of-counsel claim, the accused must generally satisfy the test set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and demonstrate that he suffered actual prejudice.  However, a defendant need not show prejudice if a 
per
 
se
 conflict exists.  
Miller
, 199 Ill. 2d at 545, 771 N.E.2d at 388.  

Defendant argues that 
People v. Daly
, 341 Ill. App. 3d 372, 792 N.E.2d 446 (2003), requires a finding of a 
per
 
se
 conflict in this case.  We disagree.  

In 
Daly
, in August 1999, the State charged Brian Jockisch with multiple counts related to drugs.  Attorney John Endres was appointed to represent Jockisch on those charges.  Those charges were dismissed on December 6, 1999, and the informant signed a written employment agreement with Schuyler County officials to make undercover drug buys four days later.  Under that agreement, Jockisch made buys at least between December 28, 1999, and August 4, 2000.  In February 2000, the State filed domestic battery charges against Jockisch in Brown County.  Endres represented Jockisch on those charges as well, which were eventually dismissed.  On June 14, 2000, Jockisch's van was stopped in Brown County and officers discovered cannabis.  However, they did not arrest Jockisch after learning he was a paid informant for Schuyler County.  Jockisch testified that he had purchased cocaine from defendant Daly in a controlled sale on July 24, 2000.  Endres represented Daly on the drug charges that arose from that transaction.  

The prosecutor conceded in the hearing on the motion 
in
 
limine
 that the work Jockisch had done in other counties may have been a consideration in the December 9, 1999, dismissal.  The trial court concluded that, with the closeness in time, the dismissal of the cases on December 6 and Jockisch's beginning to work for Schuyler County on December 28 were "'highly probative that, at least in Mr. Jockisch's mind, there was some kind of 
quid
 
pro
 
quo
.'"  
Daly
, 341 Ill. App. 3d at 375, 792 N.E.2d at 449.  The court concluded that Jockisch could be cross-examined about the connection between the cannabis dismissal on December 6, 1999, and the drug purchases but not the dismissal of the domestic battery charges.  

While Endres elicited testimony as to the cannabis charge that had been dismissed, he introduced no evidence that the dismissal was the result of an informant deal between Jockisch and law enforcement.  Nor did he impeach Jockisch with the financial arrangement made in Schuyler County, whereby police paid Jockisch for successfully buying drugs from local residents and for his "'time to testify,'" but reimbursed him only for expenses if he failed to make a buy.  
Daly
, 341 Ill. App. 3d at 375, 792 N.E.2d at 449.  Under the agreement Jockisch had been paid $5,650 plus $3,050 in living expenses.  

A jury convicted defendant Daly on all charges.  On appeal, we reversed, concluding that a 
per
 
se
 conflict of interest existed where the matter in which defense counsel represented the witness both concerned and was significantly relevant to the defendant's trial, and where the informant's case terminated only weeks before the defendant's felony trial.  
Daly
, 341 Ill. App. 3d at 377, 792 N.E.2d at 451.

We find that 
Daly
 is distinguishable from the facts in the instant case.  We recognized in 
Daly
 that to determine whether a 
per
 
se
 conflict of interest exists, we must base our determination on a realistic appraisal of defense counsel's professional relationship to the witness under the circumstances of the case.  
Daly
, 341 Ill. App. 3d at 376, 792 N.E.2d at 450.  Further, a 
per
 
se
 conflict exists only in the class of cases where defense counsel "had a tie to a person or entity--either counsel's client, employer, or own previous commitments--which would benefit from an unfavorable verdict for the defendant."  
People v. Spreitzer
, 123 Ill. 2d 1, 16, 525 N.E.2d 30, 35 (1988).  We find that, unlike 
Daly
, defense counsel's representation of Moore neither concerned nor was relevant to defendant's trial. In this case, defense counsel had represented Danny Moore at a sentencing hearing on an unrelated case 15 months earlier.  Moore had completed his sentence and was allegedly released on parole.  Moore testified that he agreed to become a drug informant to get rid of several traffic tickets.  

The record does not suggest under the standard set forth under 
Spreitzer
 that counsel's former representation of Moore would be benefitted by an unfavorable verdict for defendant.  Defendant points to Moore's testimony that Moore might go back to prison because he was still on parole at the time of trial.  Moore suggested that if he did not get rid of the traffic tickets, he would then be unable to drive, which might prevent him from keeping a steady job, a condition of parole.  However, Moore acknowledged that he could have simply paid off the fines on the tickets to retain his license.  Further, even if taken as true, the relationship between representation at a sentencing hearing on the underlying conviction and testimony suggesting a possible but speculative chain of events that would result in a parole violation on that sentence is so distant and attenuated in relation to the sentencing on the former conviction as to be virtually unrelated.  

Nor did Moore suggest that his arrangement with county officials was contingent on a guilty verdict in the instant case.  Unlike the link between the defense counsel and State witness in 
Daly
, the previous representation of Moore by defense counsel here would not be furthered by an unfavorable verdict for defendant.

Equally important is the fact that the matters on which defense counsel had represented Moore would not have been within the scope of cross-examination.  
Cf.
 
Daly
, 341 Ill. App. 3d at 377, 792 N.E.2d at 451.  Defendant could not, either in his brief or at oral argument, suggest any set of facts under which the subject matter of the representation would conceivably fall within the scope of cross-examination.  Nor does the record suggest any such possibility.  We conclude that a 
per
 
se
 conflict of interest did not exist in this case.  See 
Graham
, 
206 Ill. 2d at 472, 795 N.E.2d at 236 (No 
per
 
se
 conflict of interest exists unless defense counsel has actual or potential conflict stemming from previous or current commitment to person with interests adverse to defendant).

Where defendant fails to show a 
per
 
se
 conflict of interest, he has the burden to prove an actual conflict of interest and to demonstrate prejudice.  
People v. Flores
, 128 Ill. 2d 66, 84, 538 N.E.2d 481, 487 (1989).  Defendant has not alleged an actual conflict of interest in this case.  Nor does the record indicate that defendant was prejudiced by defense counsel's previous representation of Moore.  Therefore, we conclude that defendant was not denied his constitutional right to counsel.

Defendant next argues that the trial court erred by refusing to instruct the jury on his affirmative defense of mistake of fact.  We disagree.

We first address the issue of forfeiture.  Generally, a party that does not object at trial to an error in jury instructions forfeits the issue on appeal.  
People v. Anderson
, 325 Ill. App. 3d 624, 636, 759 N.E.2d 83, 93 (2001).  Because the record on appeal presents no evidence that (1) defendant objected at the jury instruction conference or (2) defendant sought relief by a posttrial motion, we conclude that, absent plain error, defendant has forfeited the issue on appeal. 

Defendant argues that even if he did not preserve the issue for appeal, we should consider the issue under the plain-error doctrine.  "'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.'  134 Ill. 2d R. 615(a)."  
Graham
, 206 Ill. 2d at 475, 795 N.E.2d at 238.  The plain-error rule allows a reviewing court to consider an error that would otherwise be forfeited if either "(1) the evidence is closely balanced or (2) the error is 'so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process.'"  
Graham
, 206 Ill. 2d at 475, 795 N.E.2d at 238, quoting 
People v. Hall
, 194 Ill. 2d 305, 335, 743 N.E.2d 521, 539 (2000).

However, even if we were to consider the issue, we would find that any error did not constitute reversible error.  We first note the insufficiency of the record on this issue.  "An appellant has the burden to present a sufficiently complete record of the proceedings below to support a claim of error."  
People v. Fair
, 193 Ill. 2d 256, 264, 738 N.E.2d 500, 504 (2000).  Absent a complete record on appeal, we presume that the trial court's order was in conformity with the law and had a sufficient factual basis.  
Fair
, 193 Ill. 2d at 264, 738 N.E.2d at 504.  Therefore, any doubts that may arise from the incompleteness of the record regarding an error in refusing a jury instruction will be resolved against the defendant.  See 
Fair
, 193 Ill. 2d at 264, 738 N.E.2d at 504.  

On appeal, defendant has failed to provide in the record a transcript of the jury instruction conference, either by official transcript or bystander's report (see 166 Ill. 2d R. 323(c)).  We are thus unable to scrutinize the reasoning of the trial court in failing to give such instruction.  Therefore, we presume that the trial court's decision in refusing the instruction was in conformity with the law and had a sufficient factual basis.

Even in reviewing the record before us, we cannot say that the refusal to admit the instruction amounted to plain error.  A defendant is entitled to an instruction on his theory of the case if some foundation exists for the instruction in the evidence.  
People v. Jones
, 175 Ill. 2d 126, 131-32, 676 N.E.2d 646, 649 (1997).

In asserting error by the trial court, defendant relies on 
People v. Crane
, 145 Ill. 2d 520, 585 N.E.2d 99 (1991), and 
Jones
.  In 
Crane
, a jury convicted the defendant of the beating and burning murder of the victim.  
Crane
, 145 Ill. 2d at 523, 585 N.E.2d at 100.  At trial, the circuit court refused the defendant's mistake-of-fact jury instruction.  
Crane
, 145 Ill. 2d at 526, 585 N.E.2d at 102.  The Supreme Court of Illinois concluded the trial court should have given a mistake-of-fact instruction at trial where (1) two detectives testified that the defendant stated during his interview that he believed the victim was dead prior to burning the body; (2) the State's experts were unable to conclusively determine that the victim was alive at the time of burning; and (3) a doctor testified that an unconscious body with injuries like the victim might lead a person to reasonably conclude the victim was dead.  
Crane
, 145 Ill. 2d at 526-27, 585 N.E.2d at 102.  

In 
Jones
, a jury convicted the defendant of attempt (aggravated criminal sexual abuse).  
Jones
, 175 Ill. 2d at 128-29, 676 N.E.2d at 647.  At trial, the defendant pleaded the affirmative defense of mistake of fact in that he did not know that the victim was under age 17.  
Jones
, 175 Ill. 2d at 132, 676 N.E.2d at 649.  The supreme court concluded that he was entitled to a jury instruction on mistake of fact where the State's evidence sufficiently raised the issue of defendant's reasonable belief the victim was 17 years of age or older, in that (1) the victim was 16 years and 10 months old at the time of the offense and defendant did not know the victim prior to the incident; (2) the victim was consuming alcohol, an adult activity; and (3) the victim was apparently free to stay overnight at his friend's apartment.  
Jones
, 175 Ill. 2d at 132-33, 676 N.E.2d at 649.  The court additionally considered that the jury was able to see the defendant testify and observe his appearance and demeanor to test his belief that the victim was 17 years of age or older.  
Jones
, 175 Ill. 2d at 133, 676 N.E.2d at 649.  

However, here
, defendant's evidence is comprised almost exclusively of his own testimony.  While the evidence need only be slight (
Jones
, 175 Ill. 2d at 132, 676 N.E.2d at 649), it must be more than a scintilla.  Further, the trial court had no objective basis, unlike the trials in 
Crane
 and 
Jones
, to determine that mistake of fact was a legitimate defense.  In addition, in this case, defendant merely contests a mistake of fact as to receipt of consideration, not delivery of the cannabis.  The record shows that the trial court also rejected the State's instruction relating to consideration and delivery of cannabis.  While receipt of consideration may or may not be present in a given transaction, the presence or absence of consideration is not an element of the crime of unlawful delivery of cannabis.  See 720 ILCS 550/5(d) (West 2002).  We find that defendant did not meet his burden to warrant a mistake-of-fact instruction.  

Under the above reasoning, we conclude that the trial court did not err in refusing defendant's proposed instruction.

Defendant also argues that because introducing evidence of identification of a controlled substance by only a lab report and accompanying affidavit violates an accused's constitutional right to confront his accusers, defense counsel's failure to object to admission of a lab report and affidavit at trial constituted ineffective assistance of counsel.  We disagree.

Whether to object to matters such as foundation for evidence is, by and large, a matter of trial strategy.  
People v. Sparks
, 335 Ill. App. 3d 249, 254, 780 N.E.2d 781, 785 (2002).  As a matter of strategy, failure to object does not necessarily establish substandard performance.  
Graham
, 206 Ill. 2d at 478-79, 795 N.E.2d at 240.  

Defendant asserts that 
People v. McClanahan
, 191 Ill. 2d 127, 729 N.E.2d 470 (2000), supports the assertion that failing to object to admission of a lab report and accompanying affidavit without foundation constitutes ineffective assistance of counsel in that the admission violates his right to confront witnesses against him.  We disagree with defendant's argument and conclude that the authority he cites is inapposite to the question of ineffective assistance of counsel.

Failing to object to certain State evidence has a similar effect to stipulating to the evidence.  In this case, the record does not indicate whether defense counsel and the State made an actual stipulation to admission or whether defense counsel merely chose not to object.  Either way, the effect was that the evidence was admitted.

In 
People v. Campbell
, 332 Ill. App. 3d 808, 814, 773 N.E.2d 218, 223 (2002), we held that "because a decision to stipulate to certain State evidence remains one of trial strategy within defense counsel's sound judgment ***, defense counsel's agreement to stipulate does not implicate the defendant's right under either the federal or state constitution to confront and cross-examine the witnesses against him."  Similarly, as stated above, failure to object is a matter of trial strategy.  
Sparks
, 335 Ill. App. 3d at 254, 780 N.E.2d at 785.  Therefore, we find that the failure to object does not implicate defendant's right to confront his accusers, and his argument that he received ineffective assistance of counsel fails.

Accordingly, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., and TURNER, J., concur.