No. 3-08-0829

Opinion filed April 14, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) ) ) | Appeal from the Circuit Court for the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-37 |
| ALBERT L. FIELDS, | ) ) | |
| Defendant-Appellant. | ) ) ) | Honorable Larry S. Vandersnick, Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion
Justice Schmidt dissented, with opinion

**OPINION**

Defendant, Albert L. Fields, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)), three counts of criminal sexual assault (720 ILCS 5/12-13(a)(1), (a)(3) (West 2006)), and two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2006)). He appeals contending that he was denied effective assistance of counsel because his attorney was laboring under a *per se* conflict of interest. We reverse and remand for a new trial.

FACTS

On January 5, 2007, defendant was charged by information alleging that between 1999 and October 27, 2004, defendant, age 17 or older, did, on two separate occasions, place his penis in K.N.J.'s mouth when she was younger than 13 (counts I and II predatory criminal sexual assault of a child); between 1999 and February 2006, did place his penis in K.N.J's mouth by the use or threat of force (count III criminal sexual assault); between 1999 and February 2006, did, on two separate occasions, place his penis in K.N.J.'s mouth when she was younger than 18 and he was her stepfather (counts IV and V criminal sexual assault); and between 2001 and February 2006, did fondle K.N.J.'s breasts and vagina and made her fondle his penis for his sexual arousal or gratification when she was younger than 18 and he was her stepfather (counts VI and VII aggravated criminal sexual abuse).

A public defender was appointed for defendant. Prior to trial, the court granted the prosecution's motion to introduce other-crimes evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2008)). Specifically, the court allowed evidence regarding an incident of aggravated criminal sexual abuse which formed the basis for a conviction in Rock Island County.[1] The question subsequently arose concerning the form in which that evidence would be presented. Defendant argued that testimony about the prior incident would be appropriate but not a certified copy of conviction. The State

---

[1] On July 20, 2010, a different panel of this court reversed defendant's Rock Island conviction on the basis that his trial counsel, having previously represented the victim in that case, was laboring under a *per se* conflict of interest. *People v. Fields*, 3-07-0305 (July 20, 2010) (unpublished order pursuant to Supreme Court Rule 23 (Ill. S. Ct. R. 23 (eff. Jan. 1, 2011)).

contended, and the trial court agreed, that the prosecution could present both.

During defendant's trial, the State tendered People's Exhibit No. 8, a certified copy of defendant's conviction of aggravated criminal sexual abuse in Rock Island County. The court admitted the exhibit and told the jurors it was admitted on the issue of defendant's propensity to commit the offenses with which he was charged in this case, and it was up to them to determine how much weight it should be given.

The State also called C.S. to offer testimony concerning defendant's conviction of aggravated criminal sexual abuse in Rock Island County. C.S. testified that she was born on September 12, 1996. In the summer of 2005, she lived in Moline with her mother and defendant. One morning, defendant gave her a book containing photographs of naked women and told her to put it on his weight set in the basement. He then followed C.S. downstairs, put her hand on his "wee wee" and made her rub it. Defendant also put his hand down C.S.'s pants and stuck his finger inside her. C.S. was nine years old at the time. Defendant told C.S. that he would spank her if she told anyone. C.S. eventually told her mother after defendant had kicked them out of the house.

The record on appeal reveals that defendant's public defender had represented C.S. in a previous juvenile proceeding as guardian *ad litem*. The juvenile proceeding appears to be unrelated to the criminal cases brought against defendant. Counsel's prior representation of C.S. was never disclosed to the trial court or waived on the record by defendant.

Following deliberations, in the instant case, the jury found defendant guilty on all seven counts. The trial court subsequently denied defendant's motion for a new trial. At the conclusion of defendant's sentencing hearing, the court vacated the three criminal sexual assault convictions

(counts III, IV, and V) on one-act-one-crime grounds, and imposed consecutive sentences of 18 years' imprisonment for each conviction of predatory criminal sexual assault of a child (Counts I and II), and concurrent sentences of 6 years' imprisonment for each conviction of aggravated criminal sexual abuse (counts VI and VII).

ANALYSIS

Initially, defendant contends that this "cause should be remanded for a new trial because defense counsel labored under a *per se* conflict of interest where he had previously represented *** [C.S.] as guardian *ad litem*." Because C.S. is currently "an entity assisting the prosecution," we agree with defendant's contention.

A criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. *People v. Morales*, 209 Ill. 2d 340, 345 (2004). If the record reveals a *per se* conflict, " 'there is no need to show that the attorney's actual performance was in any way affected by the existence of the conflict.' " *Morales*, 209 Ill. 2d at 345 (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 15 (1988)). Stated another way, "a *per se* conflict is grounds for reversal unless the defendant waived his right to conflict-free counsel." Morales, 209 Ill. 2d at 345. We review *de novo* the legal question whether the record presents a *per se* conflict. *Morales*, 209 Ill. 2d at 345.

Recently, the supreme court has identified three situations where a *per se* conflict exists. See *People v. Taylor*, 237 Ill. 2d 356 (2010); *People v. Hernandez*, 231 Ill. 2d 134 (2008). First, the court has found a *per se* conflict where "defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution." *Taylor*, 237 Ill. 2d at 374; *Hernandez*, 231 Ill. 2d at 143. The court has also found a *per se* conflict where

4

defense counsel contemporaneously represented a prosecution witness and where defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant. *Taylor*, 237 Ill. 2d at 374; *Hernandez*, 231 Ill. 2d at 143.

Here, counsel's representation of C.S. was not contemporaneous with his representation of defendant. Based on the parties' representations, counsel's representation of C.S. had terminated by the time the present charges were brought against defendant. Moreover, we note that counsel was not a former prosecutor involved in the prosecution of defendant, nor did he have a relationship, contemporaneous or prior, with K.N.J. (the victim) or the prosecution. However, it is undisputed that counsel did have a prior association with C.S. as her guardian *ad litem*. Thus, the only remaining question is whether C.S. can appropriately be characterized as "an entity assisting the prosecution" (*Taylor*, 237 Ill. 2d at 374; *Hernandez*, 231 Ill. 2d at 143) or whether the supreme court intended that only a municipality, organization, or company can qualify as an entity.

The record reveals that C.S. was testifying for the State and against defendant. Clearly, she was "assisting the prosecution." The question remains, however, whether she is an "entity." Neither party cites, nor does our research disclose, any authority expressly defining the term "entity" in the context of a *per se* conflict of interest. We note, however, that even the State, in its initial brief, acknowledges that "a long-terminated prior relationship between [defense counsel] and C.S. *might* constitute a *per se* conflict of interest." (Emphasis in original.)

Due to the apparent lack of case law actually defining the term "entity," we afford the term its plain, ordinary and popular meaning, *i.e.*, it will be construed with reference to the average, ordinary, normal, reasonable person. *People v. Davison*, 233 Ill. 2d 30, 40 (2009);

5

*Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). When interpreting an undefined term within a statute, policy or rule of law, it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of that term. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). West's Legal Thesaurus and Dictionary defines the term "entity" as:

> "A *real and distinct being* or organization (legal entity).
>
> Existence, article, substance, actuality, tangible thing, separate
>
> being, body, unit, *individual*, creature, structure, object."
>
> (Emphasis added.) West's Legal Thesaurus and Dictionary 280
>
> (1985) (hereinafter West).

We also note that Black's Law Dictionary defines the term "entity," in pertinent part, as "[a] real being; existence." Black's Law Dictionary 532 (6th ed. 1990) (hereinafter Black). Black also cites the federal bankruptcy code in providing that entity "includes person, estate, trust, governmental unit." Black's Law Dictionary 532 (6th ed. 1990).

In affording the term "entity" its plain and ordinary meaning, we adopt the definition espoused in both West and Black. Moreover, we cannot see any distinguishable difference between an organization/municipality assisting the prosecution and an individual, nor have we found such a difference explained by the supreme court. It begs the question, why would it be constitutionally permissible to allow defense counsel who previously represented an individual who is assisting the prosecution to currently represent a defendant, but impermissible to allow defense counsel who previously represented an organization/municipality that is assisting the prosecution to currently represent a defendant? Such a distinction seems arbitrary and illogical. Thus, we believe the supreme court chose to use the term "entity" in order to incorporate both

individuals and organizations.

Applying West/Black's definition to the facts of this case, we find defense counsel was laboring under a *per se* conflict of interest because he had a previous association with an "entity assisting the State."[2]

In coming to this conclusion, we note the State's reliance upon *People v. Lawson*, 163 Ill. 2d 187 (1994). In *Lawson*, the court observed that "[t]he common element in these [*per se* conflict] cases was that the defense counsel was previously or contemporaneously associated with either the victim ***, the prosecution ***, or an entity assisting the prosecution ***." See *Lawson*, 163 Ill. 2d at 211. For each category (victim, prosecution, and assisting entity), the court provided a citation to authority. For "entity" the court cited *People v. Washington*, 101 Ill. 2d 104 (1984), which involved defense counsel's contemporaneous employment with the Chicago Heights prosecutor's office. See *Washington*, 101 Ill. 2d at 109. In *Washington*, the court found that a conflict existed because counsel would have been forced to oppose and attempt to discredit a police officer of the municipality he was contemporaneously associated with. *Washington*, 101 Ill. 2d at 112. The State now argues that the *Lawson* court's citation to *Washington* illustrates that the supreme court intends that entity only apply to a "municipality, rather than a person." The State reads *Lawson* much too broadly.

The State apparently believes that the *Lawson* court's citation to a case in which the "entity" was a municipality necessarily precludes a finding that a person can qualify as an entity for conflict purposes. While *Lawson* seems to *implicitly* acknowledge that a municipality can qualify as an entity, it in no way holds, or even implies, that a person cannot qualify as an entity.

---

[2] We find it unnecessary to reach defendant's remaining contentions on appeal.

7

The State simply reads too much into the *Lawson* court's citation to *Washington*. The supreme court may have *intended* to draw the distinction urged by the State, but the simple citation to an example does not compel that conclusion.

The State also, mistakenly, we believe, relies upon the holdings in *People v. Enoch*, 146 Ill. 2d 44 (1991), and *People v. Flores*, 128 Ill. 2d 66 (1989), for the proposition that the supreme court has "repeatedly held that a *per se* conflict of interest will not arise based upon a counsel's prior representation of a State witness." Because of the necessarily fact-specific nature of conflicts, the blanket holding postulated by the State is untenable. The courts in *Enoch* and *Flores* both held that defense counsel's previous representation of a prosecution witness was not a *per se* conflict of interest because the record did not reveal any evidence indicating that counsel's relationship with the witness was contemporaneous with counsel's representation of defendant. *Enoch*, 146 Ill. 2d at 53; *Flores*, 128 Ill. 2d at 82.

Initially, we note that *Enoch* was decided 17 years before *Hernandez* and 19 years before *Taylor*. Likewise, *Flores* was decided 19 years before *Hernandez* and 21 years before *Taylor*. Neither *Enoch* nor *Flores* dealt with the conflict category at issue in the present case, specifically, an entity assisting the prosecution. Instead, both dealt with the conflict category of whether defense counsel contemporaneously *represented* a prosecution witness. The specific question before us in the present case is whether counsel has a *prior association* with an entity assisting the prosecution. Finally, we note that, unlike the instant case, the potential conflicts in both *Enoch* and *Flores* were disclosed to the trial court. The trial court in *Enoch* subsequently engaged in an involved colloquy with counsel who, at one point, stated that his prior representation of the prosecution witness would not impair his ability to represent the defendant. In light of these

8

factors, we find both *Enoch* and *Flores* distinguishable.

We also reject the State's assertion that ascribing C.S. the status of an "entity" would render superfluous the separate *per se* conflict category that is limited to the contemporaneous representation of a prosecution witness." Specifically, the State argues that "[i]f the supreme court had intended that 'entity' be applied to such individuals as C.S., then there was never any need to create the categorically distinct class of *per se* conflicts involving prosecution witnesses." This argument fails to acknowledge the substantial difference between the term "representation" and the term "association." The mere fact that the supreme court uses the term "association" in one category and the term "representation" in another undermines the conclusion advanced by the State.

Accordingly, having concluded that C.S. is an entity, we find that the supreme court's decisions in *Taylor* and *Hernandez* require us to find that defense counsel represented defendant while he labored under a *per se* conflict of interest. Under these circumstances, defendant's conviction must be reversed. *Spreitzer*, 123 Ill. 2d at 17.

Even if we were to accept the State's interpretation of the term "entity," we find reversal is still required because C.S. would benefit from an unfavorable verdict for defendant. Thus, it is imperative that counsel's ability to cross-examine C.S. be unfettered and unrestrained.

The supreme court has observed that when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant, a *per se* conflict arises. *Hernandez*, 231 Ill. 2d at 142; *People v. Janes*, 168 Ill. 2d 382, 387 (1995). The record, in the instant case, reveals that counsel represented C.S. in a previous juvenile proceeding as guardian *ad litem*. At K.N.J.'s trial, subsequent to the termination of counsel's representation of C.S., C.S.

9

took the stand and testified against defendant. While the State argues that C.S. did not have an interest in seeing defendant convicted, we disagree.

Significantly, we note that defendant, in the instant case, was charged with the same criminal conduct that he previously had been found to have committed upon C.S. Specifically, C.S. was called to testify against defendant on charges that he committed aggravated criminal sexual abuse against K.N.J., whom C.S. stated was her friend. It defies logic to argue that under these particular facts, C.S. would not benefit from an unfavorable verdict for the defendant.

While we acknowledge that C.S. may be unable to establish any tangible benefit to having defendant convicted of sexually abusing K.N.J., we note the clear existence of three intangible benefits. First, we note that C.S. would benefit from having her assailant incarcerated.[3] Second, the fact that defendant is convicted of committing the same exact crime against another young girl acts to validate C.S.'s own claim of sexual abuse against defendant. Finally, the opportunity to assist the State in convicting defendant allows C.S. the opportunity to help another young girl who has been subject to the same horrific behavior she herself and subsequently K.N.J. has already been required to endure.

The entire purpose of the *per se* rule of conflicts is to ensure that a defendant receives the undivided loyalty of his counsel, free from conflicting interests or inconsistent obligations. *People v. Washington*, 101 Ill. 2d 104, 110 (1984). "[I]f counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents--as a vigorous

---

[3] We acknowledge that defendant served his punishment for his conviction regarding C.S. This fact, however, does not negate the fact that C.S. would still benefit from having the individual who sexually abused her confined in prison.

10

advocate having the single aim of acquittal by all means fair and honorable--are hobbled or fettered or restrained by commitments to others' [citation], effective assistance of counsel is lacking." (Internal quotation marks omitted.) *Hernandez*, 231 Ill. 2d at 142-143.

Here, we are unable to assert with any confidence that counsel's representation was not "hobbled or fettered or restrained" by his prior commitments to C.S. For example, any information counsel may have learned regarding C.S's family situation, credibility or lifestyle due to his prior representation of C.S. would be protected under the attorney-client privilege and therefore could have impacted his ability to effectively cross-examine C.S. or attack her credibility. Moreover, because such information is protected, it would be inappropriate to simply dismiss the issue on the grounds that the record does not reveal any evidence that counsel's representation was actually "hobbled or fettered or restrained."[4] The fact that the record does not reveal any hindrance may be a direct result of the fact that counsel was still ethically bound to C.S. Under these circumstances, the record would not reveal any evidence of such hindrance. The attorney-client privilege exists, and persists even after death. *Hitt v. Stephens*, 285 Ill. App. 3d 713, 718 (1996). Stated another way, we simply do not know what defense counsel knew regarding C.S.'s family situation, credibility or lifestyle.

The fact that C.S. would benefit from an unfavorable verdict for defendant only acts to raise the stakes in ensuring that counsel is adequately able to cross-examine C.S. Without such confidence, we are simply unable to say that counsel did not labor under a *per se* conflict of interest.

---

[4] We offer no opinion on the specific question of whether the record actually reveals that counsel's representation was "hobbled or fettered or restrained" as we believe the answer to this question is irrelevant.

Accordingly, we reverse defendant's conviction and remand the matter for a new trial with new trial counsel.

Reversed and remanded with directions.

JUSTICE SCHMIDT, dissenting:

The trial court correctly held that a *per se* conflict of interest did not exist in this case.

The majority reaches the decision to reverse the trial court by ignoring one of the three categories of conduct that the Illinois Supreme Court defines as creating a *per se* conflict of interest. The first category of *per se* conflict exists when "defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution." *People v. Taylor*, 237 Ill. 2d 356, 374 (2010). The second category exists "where defense counsel *contemporaneously* represents a prosecution witness." (Emphasis added.) *Id.* The third category occurs "where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant." *Id.*

The majority recognizes that defendant's counsel does not fit in category two or three. Slip op. at 5. It then undertakes an analysis to show that a prosecution witness is an " 'entity assisting the prosecution.' " Slip op. at 5. The flaw in this approach is that by defining a witness for the prosecution as an entity assisting the prosecution, it renders the second category of *per se* conflict of interest surplusage; any representation that falls under the second prong will necessarily fall under the

first prong.  Such an interpretation runs contrary to the normal rules of interpretation.  See *People v. Frieberg*, 147 Ill. 2d 326, 349 (1992).

Not only does the majority's opinion render one of the categories of *per se* conflict of interest surplusage, it also ignores supreme court case law directly on point.  In *Enoch*, the court stated that defense counsel's prior representation of a State's witness "does not establish that a *per se* conflict of interest existed between [defense counsel] and [defendant]." *People v. Enoch*, 146 Ill. 2d 44, 52-53 (1991).  The *Enoch* court further stated that " '[w]here defense counsel has represented a State's witness, a *per se* conflict of interests exists if the professional relationship between the attorney and the witness is *contemporaneous with counsel's representation of defendant*.' " (Emphasis in original.)  *Id.* (quoting *People v. Thomas*, 131 Ill. 2d 104, 111 (1989)).  See *People v. Flores*, 128 Ill. 2d 66, 84-85 (1989).

The majority does not believe that *Flores* and *Enoch* preclude finding a *per se* conflict of interest based on the prior repre-sentation of a prosecution witness.  Slip op. at 8.  In support of that opinion, the majority makes the following statement: "The courts in *Enoch* and *Flores* both held that defense counsel's previous representation of a prosecution witness was not a *per se* conflict of interest because the record did not reveal any evidence indicating that counsel's relationship with the witness was contemporaneous with counsel's representation of defendant."

13

Slip op. at 8.  Far from supporting the majority opinion, this indicates that the court in *Enoch* and *Flores* recognized that whether or not the conflict was *per se* hinged on whether the representation was contemporaneous with the representation of defendant.  Slip op. at 8.

The majority asserts that this case "begs the question, why would it be constitutionally permissible to allow defense counsel who previously represented an individual who is assisting the prosecution to currently represent a defendant, but impermissible to allow defense counsel who previously represented an organization/municipality that is assisting the prosecution to currently represent a defendant? Such a distinction seems arbitrary and illogical."  Slip op. at 6-7.

Deciding that something is not a *per se* conflict of interest is not the same as finding it constitutionally permissible.  An activity that does not create a *per se* conflict of interest may very well be unconstitutional.  Courts simply will not presume it is unconstitutional; the defendant is required to prove the conflict of interest to obtain relief.  See *Flores*, 128 Ill. 2d at 84-85.

Supreme court precedent is clear.  *Prior representation* of a prosecution witness is not a *per se* conflict of interest.  I respectfully dissent.

14