# Illinois Official Reports

## Appellate Court

*People v. Fields*, 2015 IL App (3d) 080829-C

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALBERT L. FIELDS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-08-0829 |
| Filed | March 5, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 07-CF-37; the Hon. Larry S. Vandersnick, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Terence M. Patton, State's Attorney, of Cambridge (Stephen E. Norris and Patrick D. Daly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel
PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Schmidt specially concurred, with opinion.
Justice Lytton dissented, with opinion.

**OPINION**

¶ 1 Defendant, Albert L. Fields, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2006)), three counts of criminal sexual assault (720 ILCS 5/12-13(a)(1), (a)(3) (West 2006)), and two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2006)).

¶ 2 Defendant appealed his convictions. We reversed and remanded for a new trial on the sole ground that defendant was denied effective assistance of counsel because his attorney was laboring under a *per se* conflict of interest. We did not reach defendant's remaining issues on appeal. *People v. Fields*, 409 Ill. App. 3d 398 (2011).

¶ 3 Thereafter, the supreme court reversed our decision (*Fields*, 409 Ill. App. 3d 398) and directed us to consider "those issues previously raised but left unresolved owing to [our] disposition." *People v. Fields*, 2012 IL 112438, ¶ 43.

¶ 4 Upon subsequent review, we affirmed the trial court's judgment. *People v. Fields*, 2013 IL App (3d) 080829-B. We did not reach the question of whether the reversal of defendant's conviction in a previous case, which was admitted as propensity evidence in the present case, required reversal of the instant conviction here on appeal. *Fields*, 2013 IL App (3d) 080829-B, ¶ 28. Instead, because the earlier conviction was not reversed until after the conclusion of the instant trial, we held that the reversal of the underlying case constituted "new evidence." *Fields*, 2013 IL App (3d) 080829-B, ¶ 28. Therefore, we held that this issue must be brought in a postconviction petition. *Fields*, 2013 IL App (3d) 080829-B, ¶ 28. In so holding, we expressly noted that we lacked supervisory authority to step outside the limitations of the supreme court rules governing appeals. *Fields*, 2013 IL App (3d) 080829-B, ¶ 28.

¶ 5 Thereafter, the supreme court directed us to vacate our prior judgment (*Fields*, 2013 IL App (3d) 080829-B) and, without requiring the filing of a postconviction petition, to "resolve all of the issues identified *** in paragraphs 17 and 28 of its vacated judgment." *People v. Fields*, No. 117121 (Ill. Mar. 26, 2014) (supervisory order).

¶ 6 Upon vacating our prior judgment, we entered a minute order directing the parties to submit additional briefing on the precise question of whether defendant's conviction in the instant case must be reversed in light of the fact his previous conviction that had served as propensity evidence had been reversed.[1] *People v. Fields*, No. 3-08-0829 (Oct. 31, 2014)

---

[1]Our minute order also stated: "We remind the parties that evidence of the prior conviction was admitted on the issue of defendant's propensity to commit the offenses with which he was charged in the instant case; that the circuit court expressly held that the conviction could not be used to impeach defendant if he decided to testify; and that any argument or authority premised on the use of prior convictions for *impeachment* is irrelevant." Justice Schmidt dissented from this portion of the minute order.

(minute order). Upon review, we reverse defendant's conviction and remand the matter for a new trial.

¶ 7                                    FACTS

¶ 8     On January 5, 2007, defendant was charged by information alleging that between 1999 and October 27, 2004, defendant, age 17 or older, did, on two separate occasions, place his penis in K.N.J.'s mouth when she was younger than 13 (counts I and II predatory criminal sexual assault of a child); between 1999 and February 2006, did place his penis in K.N.J.'s mouth by the use or threat of force (count III criminal sexual assault); between 1999 and February 2006, did, on two separate occasions, place his penis in K.N.J.'s mouth when she was younger than 18 and he was her stepfather (counts IV and V criminal sexual assault); and between 2001 and February 2006, did fondle K.N.J.'s breasts and vagina and made her fondle his penis for his sexual arousal or gratification when she was younger than 18 and he was her stepfather (counts VI and VII aggravated criminal sexual abuse).

¶ 9     Prior to trial, the circuit court granted the State's motion to introduce other-crimes evidence pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-7.3 (West 2008)). Specifically, the court allowed evidence regarding an incident of aggravated criminal sexual abuse which formed the basis for a conviction in Rock Island County. The parties disputed the form in which that evidence would be presented. Defendant argued that testimony about the prior incident would be appropriate but not a certified copy of conviction. The State contended, and the circuit court agreed, that the prosecution could present both. Ultimately, the court held that the State could present the certified copy of conviction as well as testimony.

¶ 10    During trial, the State tendered People's Exhibit No. 8, a certified copy of defendant's conviction of aggravated criminal sexual abuse in Rock Island County. The circuit court admitted the exhibit and told the jurors it was admitted on the issue of defendant's propensity to commit the offenses with which he was charged in this case, and it was up to them to determine how much weight it should be given. The court expressly ruled, however, that the conviction could not be used to impeach defendant's credibility if he chose to testify.

¶ 11    The State also called C.S. to offer testimony concerning defendant's conviction of aggravated criminal sexual abuse in Rock Island County. C.S. testified that she was born on September 12, 1996. She lived in Moline with her mother and defendant. One morning, defendant gave her a book containing photographs of naked women and told her to put it on his weight set in the basement. He then followed C.S. downstairs, put her hand on his "wee wee" and made her rub it. Defendant also put his hand down C.S.'s pants and stuck his finger inside her. C.S. was nine years old at the time. Defendant told C.S. that he would spank her if she told anyone. C.S. eventually told her mother after defendant had kicked them out of the house.

¶ 12    K.N.J. testified that she lived with her mother, brother, two sisters, and her mother's boyfriend, defendant.[2] At some point, defendant and K.N.J.'s mother married. K.N.J. testified to a series of sexual incidents involving her and defendant. On one occasion, defendant asked K.N.J. to lift her shirt and her bra. She did so and defendant stared at her. He said it was punishment because she had been mean to her mother. On subsequent occasions, defendant

---

[2]Defendant resided with both C.S. and K.N.J. at different times.

- 3 -

would ask her to lift her shirt and bra and defendant would touch her breasts. Sometimes, defendant would touch her breasts with one hand and masturbate with the other. K.N.J. also recalled other incidents in which defendant made her touch his penis with her hand and put his penis in her mouth. She also recalled him touching her "private area." All these incidents happened at home and when everyone else living in the home was either asleep or not around. K.N.J. could not remember how many times these things happened, nor could she recall all the particulars of each incident.

¶ 13    K.N.J. further testified that defendant moved out for good after a woman from the Department of Children and Family Services (DCFS) came to the home to speak with her and other members of her family. When K.N.J. was told the woman wanted to talk to her, defendant made a gesture to K.N.J. as if to tell her to keep her lips "zipped." The woman subsequently asked if defendant had ever touched K.N.J. K.N.J. responded no and stated she would tell her mother if anyone had inappropriate contact with her. At this point, DCFS had not received any complaints about defendant abusing K.N.J. The visit to K.N.J.'s home resulted from C.S.'s complaints against defendant. K.N.J. eventually informed her mother of defendant's alleged abuse. K.N.J.'s mother subsequently contacted the authorities.

¶ 14    Officer Richard Turley testified that he interviewed defendant. Defendant denied he abused K.N.J. He stated that K.N.J.'s mother must have put her up to it after learning he had an affair with another woman (C.S.'s mother).

¶ 15    Defendant testified that he and his daughter, Ashley, moved in with K.N.J. and K.N.J.'s family in 2000. Defendant denied ever having sexual contact with K.N.J. He also denied having sexual contact with C.S. Defendant admitted having an affair with C.S.'s mother. While incarcerated in jail awaiting trial on the charges brought by C.S., defendant received a letter from K.N.J.'s mother stating she was not sure she could continue to be a good wife because she would want to get even with him for cheating on her. In rebuttal, the State called K.N.J.'s mother. She admitted writing defendant while he was in jail but denied threatening retaliation based on his affair with C.S.'s mother.

¶ 16    Following deliberations, in the instant case, the jury found defendant guilty on all seven counts. At the conclusion of defendant's sentencing hearing, the court vacated the three criminal sexual assault convictions (counts III, IV, and V) on one-act, one-crime grounds, and imposed consecutive sentences of 18 years' imprisonment for each conviction of predatory criminal sexual assault of a child (counts I and II), and concurrent sentences of 6 years' imprisonment for each conviction of aggravated criminal sexual abuse (counts VI and VII).

¶ 17    On September 30, 2009, subsequent to defendant's conviction and sentence in the instant case, a different panel of this court reversed defendant's Rock Island County conviction (hereinafter, Rock Island) (charges involving C.S.) on the basis that his trial counsel, having previously represented C.S., was laboring under a *per se* conflict of interest. *People v. Fields*, No. 3-07-0305 (Sept. 30, 2009) (unpublished order under Supreme Court Rule 23). The panel remanded the matter for a new trial.

¶ 18    On remand (April 15, 2010), the State filed a motion to dismiss the Rock Island charges (abuse of C.S.) with leave to reinstate. The circuit court granted the State's motion. Rock Island County's docket sheet does not show that the State refiled the charges against

defendant.[3] Thus, at the present time, it appears no conviction or charges exist with regard to any alleged sexual conduct defendant had with C.S.

¶ 19                                                    ANALYSIS

¶ 20        The issue before us is narrow: Whether the subsequent reversal of defendant's underlying prior conviction admitted to show propensity requires reversal and a new trial. Both parties acknowledge that this question has never been addressed by an Illinois court. The State implicitly concedes that subsequent reversal of a propensity conviction results in injustice. However, the State argues that any resulting injustice in the instant case is harmless due to the remaining evidence against defendant. We disagree.

¶ 21        At the outset, we note that the reversal of an underlying prior conviction admitted to show propensity does not result in automatic reversal. Only structural error justifies automatic reversal. *People v. Thompson*, 238 Ill. 2d 598, 608 (2010). Errors recognized as structural include a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *Thompson*, 238 Ill. 2d at 608. The instant case does not fall within one of the above categories.

¶ 22        Instead, we find that the reversal of the underlying case constitutes "new evidence" in light of the fact that the conviction was in good standing at the time of instant trial.[4] Thus, in order to obtain reversal of his instant conviction defendant must show that the "new evidence" would probably change the result upon retrial. *People v. Davis*, 2012 IL App (4th) 110305, ¶ 62. The Supreme Court of the United States recently explained: "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.' " *Smith v. Cain*, 565 U.S. ___, ___, 132 S. Ct. 627, 630 (2012) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Upon review, we hold that the admission of the underlying conviction played such a significant role in defendant's trial, in light of the lack of direct evidence, that any confidence in defendant's conviction in the instant case is undermined upon the subsequent reversal of the underlying conviction.

¶ 23        "[T]he legislature enacted section 115-7.3 [of the Code] to enable courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses ***." *People v. Donoho*, 204 Ill. 2d 159, 176 (2003). In the seminal case of *Donoho*, the supreme court expressly held that such evidence "strengthens evidence in sexual abuse cases." *Donoho*, 204 Ill. 2d at 178.

¶ 24        The case at bar balanced the credibility of K.N.J.'s accusations against the credibility of defendant's denials. There were no eyewitnesses or physical evidence. Defendant did not make any incriminating statements. We also note the similarities between the facts of the Rock Island conviction and the present case. Both incidents occurred within a family-type

_____

[3]After vacating our previous order, we directed the circuit court to determine whether defendant had been recharged. On October 24, 2014, we received Rock Island County's docket showing that the last activity in the file was defendant's *pro se* demand for speedy trial and/or quash warrant that was filed on October 4, 2012.

[4]While the reversal of the underlying conviction is not tangible "new evidence," *i.e.*, DNA evidence, we view it as intangible "new evidence."

relationship and involved children in the same age range (C.S. was born in 1996, K.N.J. was born in 1991). Both incidents involved female children of women with whom defendant was currently living. Both incidents involved defendant either inserting his finger in or touching the girl's vagina. Both incidents involved defendant forcing the girls to touch his penis. Under these particular circumstances, it is beyond reasonable that the entire case turned upon the admission of the underlying conviction was critical to the State's ability to secure defendant's conviction.

¶ 25   In coming to this conclusion, we reject the State's argument that C.S.'s testimony regarding the conduct involving the conviction renders the admission of the conviction harmless. We initially point out the inherent disconnect in the State's argument. At trial, the State correctly argued that the admission of the conviction was extremely probative to show defendant's propensity to commit the charged offense.[5] Curiously, the State now argues on appeal that the admission of the conviction did not truly matter due to C.S.'s testimony. We reject such contradictory reasoning. Moreover, C.S.'s testimony standing alone is much less compelling than an actual conviction of the same alleged conduct. The conviction informs the jury that defendant was previously found guilty beyond a reasonable doubt of the same type of offense. Absent the conviction, the jury would have been left to determine C.S.'s credibility in light of defendant's denials of any improper conduct with C.S. The conviction, however, validates C.S.'s allegations beyond a reasonable doubt and also strengthens the credibility of K.N.J.'s claim that defendant committed the same type of offense against her.

¶ 26   We also reject the State's reliance upon the fact that the underlying conviction "was not reversed on the grounds that the evidence against defendant was insufficient." This has no bearing on our analysis. The only fact that matters is that the conviction was reversed and therefore defendant is presumed innocent until he is retried and proven guilty beyond a reasonable doubt. See *People v. Weinstein*, 35 Ill. 2d 467, 469-70 (1966).

¶ 27   For the foregoing reasons, we reverse defendant's conviction in the instant case and remand the matter for a new trial.

¶ 28   Reversed and remanded.

¶ 29   JUSTICE SCHMIDT, specially concurring.

¶ 30   The State has posed the remaining issue for us as follows: "The People urge this Court to consider the totality of the circumstances to determine whether any error resulting from the admission of a subsequently-reversed conviction was sufficiently prejudicial to warrant a new trial."

¶ 31   In this case, defendant was on trial for molesting K.N.J. C.S. testified that defendant had also molested her. The State then put on evidence that defendant had been convicted of the crimes alleged by C.S. This evidence, from a real world, commonsense standpoint told the jury that a court had previously determined, beyond a reasonable doubt, that C.S. was telling the truth. This evidence reduced defendant's likelihood of being found not guilty to virtually nil. I agree that the error requires a new trial.

_____

[5]The underlying conviction was properly admitted at trial due to the fact that it was in good standing at the time and its probative value outweighed its prejudicial effect.

¶ 32   Put another way, defendant's first conviction for crimes alleged by C.S. was reversed on the basis that defendant's lawyer at that time was suffering under a *per se* conflict and denied defendant his sixth amendment right to effective assistance of counsel. That defective conviction was then used not only to establish that defendant had a propensity to molest children, but also to basically tell the jury that one of the witnesses at trial had already been determined by a court to be telling the truth. It seems that our system of justice cannot tolerate this scenario. In that regard, I point out that I do not think that a subsequent reversal of the conviction always demands retrial. That is, this is not a one-size-fits-all proposition. However, on the facts of this case, I agree that the subsequent reversal of defendant's prior conviction, which was admitted not only to show propensity, but which also undoubtedly told the jury that everything C.S. said was fact, requires reversal and a new trial.

¶ 33   JUSTICE LYTTON, dissenting.

¶ 34   I agree that the admission of defendant's prior conviction was error. I dissent because I believe the error was harmless.

¶ 35   While the prior conviction used against defendant was reversed on grounds of constitutional error, no particular constitutional right of defendant was affronted by the court's acceptance of a prior conviction that was later reversed on appeal. The issue involves a question of error in a prior conviction's admission into evidence. A purely evidentiary error is harmless where there is no reasonable probability that the jury would have acquitted the defendant absent the error. *In re E.H.*, 224 Ill. 2d 172, 180 (2006).

¶ 36   There was sufficient evidence for the jury to have found defendant guilty of predatory criminal sexual assault without the prior conviction before it. Use of the prior conviction was only one piece of evidence the State presented to prove defendant's guilt. In addition to the victim's testimony, the jury also heard the credible testimony of C.S., the victim in the prior case, regarding defendant's acts of sexual abuse against her. C.S. testified that when she was nine years old defendant put her hand on his penis and made her rub it. He also put his hand down her pants and stuck his finger inside her. This testimony was thorough; it supplied the necessary facts to be properly admitted as other crimes evidence. See *People v. Baldwin*, 2014 IL App (1st) 121725, ¶ 73 (testimony of prior sexual assault is admissible under section 115-7.3 of the Code even though the defendant has been acquitted of the prior offense). C.S.'s testimony allowed the jury to consider the relevance of her testimony as other crimes evidence even without admitting proof of the prior conviction. Moreover, C.S.'s testimony regarding defendant's conduct in the prior case was consistent with K.N.J.'s testimony regarding defendant's sexual acts in this case. K.N.J. also claimed that defendant made her touch his penis, that defendant touched her "private area" and that defendant fondled her for his sexual gratification.

¶ 37   The evidence, apart from the admission of defendant's prior conviction, was sufficient to allow any rational trier of fact to find that the elements of the offense had been proven beyond a reasonable doubt. There is no reasonable probability that the jury would have acquitted defendant if the trial court had not admitted the prior conviction. I would therefore affirm defendant's conviction in this case.